**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| SIGHTLINE PAYMENTS LLC, | |
| *Plaintiff*, | Case No. 6:21-cv-1015 |
| v. | **COMPLAINT FOR PATENT INFRINGEMENT** |
| EVERI HOLDINGS INC., EVERI PAYMENTS INC., EVERI GAMES HOLDING INC., and EVERI GAMES INC., | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

Plaintiff Sightline Payments LLC ("Sightline"), hereby brings this action against Defendants Everi Holdings Inc., Everi Payments Inc., Everi Games Holding Inc., and Everi Games Inc. (collectively, the "Defendants" or "Everi") for patent infringement of United States Patent Nos. 8,708,809 (the "'809 Patent"), 8,998,708 (the "'708 Patent"), 9,196,123 (the "'123 Patent"), 9,466,176 (the "'176 Patent"), and 9,785,926 (the "'926 Patent") (collectively, the "Asserted Patents") and alleges as follows:

## I.      THE PARTIES

1.      Sightline is a Delaware limited liability company with a place of business at 6750 Via Austi Parkway, Suite 130, Las Vegas, Nevada 89119.

2.      Everi Holdings Inc. is a corporation organized and existing under the laws of the State of Delaware.  Everi Holdings Inc. does business in this judicial district and state and elsewhere throughout the United States, including by and through Everi Payments Inc., Everi Games Holding Inc., and Everi Games Inc.

3.      Everi Payments Inc. is a corporation organized and existing under the laws of the State of Delaware.  Everi Payments Inc. has maintained a registered office in the State of Texas

- 1 -

since at least December 1998.  Everi Payments Inc. currently maintains that registered office at 1701 Directors Boulevard, Suite 300, Austin, Texas 78744.  Everi Payments Inc. does business in this judicial district and state and elsewhere throughout the United States, including in conjunction with Everi Holdings Inc., Everi Games Holding Inc., and Everi Games Inc.

4.     Everi Games Holding Inc. is a corporation organized and existing under the laws of the State of Texas.  Everi Games Holding Inc. has its principal place of business at 206 Wild Basin Road South, Building B, Austin, Texas 78746.  Everi Games Holding Inc. does business in this judicial district and state and elsewhere throughout the United States, including in conjunction with Everi Holdings, Everi Payments Inc., and Everi Games Inc.

5.     Everi Games Inc. is a corporation organized and existing under the laws of the State of Delaware.  Everi Games Inc. has its principal place of business at 206 Wild Basin Road South, Building B, Austin, Texas 78746.  Everi Games Inc. does business in this judicial district and state and elsewhere throughout the United States, including in conjunction with Everi Holdings Inc., Everi Payments Inc., and Everi Games Holding Inc.

6.     In 2014, Everi Holdings Inc. (then known as Global Cash Access Holdings, Inc.) acquired Everi Games Holding Inc. (then known as Multimedia Games Holding Inc.) and Everi Games (then known as Multimedia Games Inc.).  The entity formerly known as Global Cash Access Holdings, Inc. caused its name to be changed to Everi Holdings Inc. effective August 24, 2015.  The entity formerly known as Multimedia Games Holding Inc. caused its name to be changed to Everi Games Holding Inc. effective August 24, 2015.  The entity formerly known as Multimedia Games Inc. caused its name to be changed to Everi Games Inc. effective August 24, 2015.

7.     Everi Holdings Inc. is a holding company.  The assets of Everi Holdings Inc. are the issued and outstanding shares of capital stock of Everi Games Holding Inc. and Everi Payments

Inc.  Everi Games Holding Inc. owns the issued and outstanding shares of capital stock of Everi Games Inc.  Everi Holdings Inc. is traded on the New York Stock Exchange.  Everi Holdings Inc. does not nor does it attempt to make any cognizable distinction by and between itself, Everi Payments Inc., Everi Games Holding Inc., and Everi Games Inc.  Everi Holdings Inc. refers to itself and "its consolidated subsidiaries" (including Everi Payments Inc., Everi Games Holding Inc., and Everi Games Inc.) as the "the 'Company,' 'we,' 'us,' and 'our'," in Securities and Exchange Commission filings as recently as its Form 10-Q for the quarterly period ended June 30, 2021.  Everi Holdings Inc. states that it "reports its financial performance, and organizes and manages its operations" across both its games and financial transactions business segments.

8.     Everi Holdings Inc. publicly refers to, markets, and promotes both itself and its subsidiaries in the collective, including as recently as September 29, 2021.  Said reference directly concerns the complained of acts set forth herein.  In a press release for the Global Gaming Expo 2021, Everi stated that "Everi Holdings Inc. (NYSE: EVRI) ('Everi' or 'the Company') . . . will showcase its ever-expanding 'Digital Neighborhood' . . . at Global Gaming Expo (G2E) 2021."  "Everi's 'Digital Neighborhood,'" according to the September 29, 2021 press release, "represents a complete suite of financial, casino loyalty and compliance products and services that bring commonality and continuity to operator workflows."  Everi specifically identified *CashClub Wallet* as integrating and extending "cashless payments throughout the gaming enterprise using traditional, alternative, and mobile technologies."

9.     Sightline believes that Defendants Everi Holdings Inc., Everi Payments Inc., Everi Games Holding Inc., and Everi Games Inc.—either individually and/or in concert with one another—engaged in each of the complained of acts set forth herein.  Sightline does not believe that any Defendant entity undertook any complained of action without the knowledge, ratification, and/or express or inherent authorization of the other.  Sightline alleges that the Everi Defendants

produced a single indivisible injury as part of a common business enterprise and are therefore jointly and severally liable, agents, and/or alter egos with respect to the same.

## II.     JURISDICTION AND VENUE

10.     This Action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*, for Everi's infringement of the Asserted Patents. The jurisdiction of this Court over the subject matter of this Action is proper pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has personal jurisdiction over Everi.  Everi transacted business and committed infringing acts within and directed to the State of Texas including this specific judicial district.  Sightline's claims arise from those activities.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  Everi committed acts of infringement in the Western District of Texas.  Everi maintains a regular and established place of business in the Western District of Texas.  Everi has maintained that regular and established place of business in the State of Texas and within the Western District of Texas since at least 2014.  Everi has maintained a registered office in the State of Texas and within the Western District of Texas since at least 1998.  Everi Holdings Inc. acquired Multimedia Games Holding Inc. and Multimedia Games Inc. (now Everi Games Holding Inc. and Everi Games Inc.) in 2014.  Both entities have the same Austin, Texas address.

## III.     FACTS

### A.     Sightline's Asserted Patents

13.     The '809 Patent is entitled "Systems and Methods for Administration of Non-Wagering Account Associated with Gaming Environment."  Sightline is the owner of all right, title, and interest in the '809 Patent.  The '809 Patent was duly and properly issued by the United States Patent and Trademark Office on April 29, 2014.  The '809 Patent is presumed valid under

35 U.S.C. § 282.  The '809 Patent is enforceable. A true and correct copy of the '809 Patent is attached hereto as **Exhibit A**.

14.     The '708 Patent is entitled "Systems and Methods for Administration of Non-Wagering Account Associated with Gaming Environment."  Sightline is the owner of all right, title, and interest in the '708 Patent.  The '708 Patent was duly and properly issued by the United States Patent and Trademark Office on April 7, 2015.  The '708 Patent is presumed valid under 35 U.S.C. § 282.  The '708 Patent is enforceable.  A true and correct copy of the '708 Patent is attached hereto as **Exhibit B**.

15.     The '123 Patent is entitled "Systems and Methods for Balance Transfers Associated with Gaming Environments."  Sightline is the owner of all right, title, and interest in the '123 Patent.  The '123 Patent was duly and properly issued by the United States Patent Office on November 24, 2015.  The '123 Patent is presumed valid under 35 U.S.C. § 282.  The '123 Patent is enforceable.  A true and correct copy of the '123 Patent is attached hereto as **Exhibit C**.

16.     The '176 Patent is entitled "Systems and Methods for Balance Transfers Associated with Gaming Environments."  Sightline is the owner of all right, title, and interest in the '176 Patent.  The '176 Patent was duly and properly issued by the United States Patent and Trademark Office on October 11, 2016.  The '176 Patent is presumed valid under 35 U.S.C. § 282.  The '176 Patent is enforceable.  A true and correct copy of the '176 Patent is attached hereto as **Exhibit D**.

17.     The '926 Patent is entitled "Systems and Methods for Balance Transfers Associated with Gaming Environments."  Sightline is the owner of all right, title, and interest in the '926 Patent.  The '926 Patent was duly and properly issued by the United States Patent and Trademark Office on October 10, 2017.  The '926 Patent is presumed valid under 35 U.S.C. § 282.  The '926 Patent is enforceable.  A true and correct copy of the '926 Patent is attached hereto as **Exhibit E**.

18.     The '809 and '708 Patents are (as suggested by their title) generally directed to the administration of non-wagering accounts within gaming environments (the "ANWA Patents"). The '123, '176, and '926 Patents are (as suggested by their title) generally directed to balance transfers associated with gaming environments (the "BT Patents").   The '926 Patent is a continuation of the '176 Patent.  The '176 Patent, in turn, is a continuation of the '123 Patent.  The '123 Patent is a continuation-in-part of the '708 Patent.  The '708 Patent, in turn, is a continuation of the '809 Patent.

**B.     The Challenges of Cash Demand and Replenishment and Capturing Player Wagering and Non-Wagering Activity at Gaming Establishments**

19.     The Asserted Patents involve technologies that allow for cashless transactions used in casino gaming offerings and non-gaming spend.  These inventions were originally developed by Kirk Sanford, Thomas Sears, and Omer Sattar — all co-founders of Sightline.  The inventors of the Asserted Patents recognized that the field could benefit from improved systems and methods for cashless wagering and redemption.

20.     Prior to conception of the inventions embodied in the Asserted Patents, gaming establishments, such as casinos, faced significant obstacles and hindrances created by the demand for cash and cash replenishment on the gaming floor.  The casino gaming industry was then an industry well-known for being cash dominant.  Cash access was critical to the success of the casino. The casino and gaming industry is even today recognized as one of the final cash-dependent industries.

21.     For example, casinos would maintain cash advance machines, such as automatic teller machines ("ATMs"), so that players could withdraw cash to use on the gaming floor.  And casino gaming devices were typically networked via a central computer.  These gaming devices could issue paper tickets to be redeemed for cash at assisted-service counters (i.e., a casino cage) or through self-service computer systems (i.e., Ticket-In-Ticket-Out (TITO) machines).  Paper

tickets could easily be lost, damaged, or destroyed, however, and the tickets would have to be replenished by the casino.  To accommodate ticket redemptions at both the assisted-service counters and TITO machines, casinos had to maintain sufficient cash reserves so that it could be made available for those transactions. Sufficient cash reserves also had to be maintained when players wished to exchange chips for cash. These demands for cash replenishment are both costly and burdensome for casinos.

22.     Prior to the conception of the inventive solutions embodied in the Asserted Patents, many casinos also provided the option for a casino patron player to create a loyalty account unique to that casino patron.  Such accounts would track player spending on the gaming floor.  But casino loyalty accounts and corresponding systems did not capture player spending activity in a non-gaming environment, such as purchases at a merchant inside the casino.  Without the ability to capture non-wagering spend activity in conjunction with wagering activity, casinos failed to taking advantage of key marketing analytics and strategies.  As a result, casino patron players were not rewarded for their spending activity outside of the gaming environment.  And by extension, casinos and other gaming facilities missed on opportunities to further ingratiate themselves with their customers thereby furthering their gaming establishment spend.

## C.     The Asserted Patents Provide Solutions to These Challenges

23.     Messrs. Sanford, Sears, and Sattar—in conjunction with their company, Sightline—addressed these problems with their new inventions.  Embodiments of these solutions are reflected in the Asserted Patents.  The inventors of the Asserted Patents worked to bring their collective vision for digital and cashless transactions and patron profile development to the casino gaming industry.  And Sightline has been at the forefront of creating omni-channel cashless innovations in the gaming industry.  The Nevada Gaming Commission approved electronic transfers of money to games or gaming devices in June 2020.  A year later, Sightline was the

financial conduit for one of Las Vegas' newest resort properties.  Using Sightline technology, this multi-billion resort property can move funds from a customer's debit card, bank account, PayPal account or another source into a mobile wallet.

24.    The use of contactless payments was—as evidenced by Sightline's success—already growing.  The COVID pandemic only exacerbated the urgency for the casino gaming industry to adopt contactless payment options.  For example, the American Gaming Association released research in June 2020 showing 57 percent of casino visitors viewed digital or contactless payments on the casino floor as important because of the pandemic.   The Asserted Patents answer that call and describe and claim a variety of solutions that allow for seamless and cashless wagering, redemption, and spending transactions at gaming establishments.  By allowing a player to connect to their financial institutions, payment options, and casino game systems in single mobile device platform, players have no need to engage a casino counter or machine for cash access.  Casinos thus benefit from maintaining the same or lesser amounts of cash as they did prior to the inventions of the Asserted Patents but with less capital outlay on purchasing, repairing, and replacing cash advance machines, TITO machines, and other costly equipment.

25.    Certain claimed embodiments of the Asserted Patents also allow for the integration of a player loyalty account with a single mobile device platform.  This platform already seamlessly connects the player to their financial institutions and payment options with the casino game system.  Embodiments of the Asserted Patents allows for a system to capture player wagering activity in the gaming environment as well as player spending activity in non-gaming environments.  Player wagering and non-game spending history activity is useful to the casino in developing promotions, gifts, and advertisements to retain the player at the casino property and further their spending on the casino floor.  Players likewise enjoy and benefit from this data by accumulating loyalty status entitling them to certain benefits and access not otherwise available to non-member patrons.  With

an all-inclusive mobile device platform like those described and claimed in the Asserted Patents, casinos reach their users through their devices with highly personalized and interactive mobile marketing campaigns that drive increased reach, loyalty, and visitation to properties.

26.     The claimed inventions of the Asserted Patents offer technical solutions to eliminate the need for cash and cash replenishment at gaming establishments.  The claimed inventions of the Asserted Patents allow a gaming establishment to capture valuable player wagering and non-wagering activity based on a single mobile device platform.  The claims of each Asserted Patent, when viewed as a whole including ordered combinations thereof, are not merely a recitation of well-understood, routine, or conventional technologies or components.

27.     The Asserted Patents do not merely use computers as tools. The Asserted Patents describe and claim improvements to computer systems.  The Asserted Patents disclose various embodiments of "systems and methods that provide cashless wagering and redemption" and that "allow a gaming establishment to track player activity and player purchase activity, both inside and outside the casino, to associate such activity with the player's loyalty profile." '809 Patent at 1:63-2:3.   One embodiment disclosed in the '809 Patent specification allows "a player to selectively transfer funds between various types of gaming accounts and an associated account, such as a stored value account and/or a casino level player account."  *Id*. at 4:50-55.

28.     The stored value account can be a financial account with funds accessible to the cardholder through an associated stored value payment vehicle, such as a physical card, a virtual payment device, a prepaid card, or any other suitable format. '809 Patent at 4:55-64.  "[A] player identifier for a particular player can be linked to, or otherwise associated with, a stored value account . . . accessible by the particular player."  *Id*. at 6:1-4.  A player can interact with a gaming device, such as a slot machine, by providing a player identifier to the device and/or additional credentials, such as a PIN or password.  *Id*. at 6:6-10.  Through network communications, the

gaming device can communicate with various casino management systems and platforms to authenticate the player's identity.  *Id*. at 6:10-15.

29.   "Once authenticated, the player can selectively access funds that are maintained in the stored value account of an issuing financial institution for use at the gaming device."  '809 Patent at 6:15-18.  A transaction facilitator, such as an application program interface (API), can determine a stored value account associated with the player and, through closed network communications with the issue financial institution, dispatch appropriate messaging to debit the stored value account.  *Id*. at 6:16-29.  "Indication of a successful debit can be provided to the casino computing system by the transaction facilitator."  *Id*. at 6:29-31.

30.   "The casino computing system can then credit one or more gaming accounts of the player to increase their available balances" and "[f]unds, in the form of gaming credits, can then be distributed to the gaming device."  '809 Patent at 6:31-36.  When the player wishes to "cash out" of the gaming device, the gaming credits can be transferred to the gaming account.  *Id*. at 6:36-39.  Once received in the gaming account, the credits can then be converted to a fund amount and used to credit the stored value account, held in the gaming account, or transferred to another gaming account.  *Id*. at 6:39-44.

31.   The various account transfers described above and below can be performed in substantially real-time.  '809 at 6:44-45. "[S]ubstantially real-time means generally less than about 20 minutes, generally less than about 10 minutes, and generally less than about 5 minutes, generally less than about 1 minutes, or generally less than about 30 seconds."  *Id*. at 6:45-49. For example, if the player had chosen to convert gaming credits to a fund amount, "the funds transferred to the stored value account can be accessible to make purchases using the associated stored value payment vehicle in substantially real-time."  *Id*. at 6:49-53.

32.     An issuing financial institution can use secured communication links to provide a financial facilitator with information based on stored value account transactions.  '809 Patent at 6:64-67.  "The financial facilitator can determine a player identifier associated with that stored value account and then provide reporting to the casino computing system."  *Id*. at 6:67-7:3. "This reporting can be used, for example, to supplement or update a loyalty profile of a player based on the increased knowledge about the player gained from tracking their spending." *Id*. at 7:3-5.



FIG. 4

33.     Figure 4 of the '809 Patent (reproduced above) schematically shows the system with "an association between a stored value payment vehicle (316) and a gaming account (388)" and a function for player tracking of their gaming account (388) and financial transactions (364) through the player's loyalty profile (352).   '809 Patent at 10:23-29.   "[T]he player (314) can selectively direct the transfer of funds (316A) into a gaming account (388) of a casino environment (302)"; "direct the transfer of funds (316B) from the gaming account (388)"; and/or perform a "financial transaction (364) in the stored value payment vehicle (316) is used at a merchant (366)."

*Id*. at 9:66-10:5, 10:26-29.  The gaming account (388) can be a wagering account, a casino level player account, or a combination thereof.  *Id*. at 10:5-8.

34.    "The merchant (366) can be, for example, any type of merchant or ATM that accepts the stored value payment vehicle (316) as a form of payment."  '809 Patent at 10:28-30.  Through data captures (354) and (362) information regarding fund transfer data in the casino environment (302) and information regarding financial transactions outside the casino environment (302) can be provided to the player loyalty profile (352).  *Id*. at 10:17-18, 10:26-28.  "[T]he player loyalty profile (352) is maintained by a customer management engine (360), which can be operated by the gaming operator of the gaming environment (302) or a third party service provider."  *Id*. at 10:33-37.  Based on the information that is tracked, "an operator of the gaming environment (302), or other parties or entities, can offer various incentives, discounts, coupons, deals, programs, or offerings to the player (314)" "through a loyalty account associated with the player loyalty profile (352) and/or provided through the stored value payment account."  *Id*. at 10:37-44.

35.    These inventive embodiments may be implemented in the context of a variety of computing environments.  These include "an attended computing system (such as a casino case) or an unattended computing system (such as at a kiosk)."  '809 Patent at 16:16-18.  Various modules may be implemented at various points within the system including at the cage, kiosk, pit, or mobile device.  *Id*. at 16:18-35.  Such a system can include a server that "provide[s] a graphical web user interface through which various users . . . can interact"; the server may similarly "accept requests such as HTTP requests, from clients . . . and serve the clients responses."  *Id*. at 16:60-66.  Users might also use "special software installed on their computing system . . . to communicate . . . via [a] network."  *Id*. at 17:1-4.

36.     Nor do the claims of the Asserted Patents merely recite the receipt, analysis, or transmission of data.  Claim 22 of the '809 Patent is but one example of one of an inventive solution embodied in and claimed by the Asserted Patents.  Claim 22 of the '809 Patent recites:

> A computer-based method of funding an account associated with a stored value payment vehicle, comprising:
>
>> receiving, by a casino computing system, a load request initiated by a player, wherein the load request comprises a request to load player-sourced funds to a stored value account, wherein the stored value account has a first available balance amount associated with any of a stored value payment vehicle and a player identifier; []
>>
>> communicating, by the casino computing system, with an issuer processor computing system to increase the first available balance amount of the stored value account to a second available balance amount based on a total value of funds to be loaded
>>
>> . . .
>>
>> receiving, by the casino computing system, a request from the player to transfer a balance from the stored value account to a gaming account.

37.     The Asserted Patents overcome prior art limitations of conventional gaming accounts in the gaming environment by providing an association of a stored value account and a player identifier with the gaming account by way of the solutions described in the Asserted Patents. The solutions described and claimed in the Asserted Patents further bridge different computing systems—such as a casino system and an issuer processor system—whereby monetary value managed amongst different accounts on different systems may be unified or otherwise integrated to facilitate access of those funds on the gaming floor.  Gaming establishments with such solutions allow for the elimination of cash demand and replenishment and for capturing player wagering and non-wagering activity at the gaming establishment. The Asserted Patents further allow for improved computer functionality and network communications involved in gaming accounts and enhanced player access to funds and loyalty rewards on and off the gaming floor.

1

2
**D.    The Claimed Inventions Were Not Well-Known, Routine, or Conventional**

3
38.    The claimed inventions of the Asserted Patents were not well-known, routine, or

4
conventional at the time of invention.  The claimed inventions of the Asserted Patents represent

5
specific improvements over the prior art and existing systems and methods. This is demonstrated

6
by, among other things, the description of the state of the art by the Examiner during the

7
prosecution of the Asserted Patents and related applications.

8
39.    For example, during prosecution of the application that issued as the '809 Patent,

9
the Examiner cited patent application publication number 2012/0123943 ("Potts") as prior art.  The

10
Examiner stated:

11
> Potts discloses a system/method for checkless cash advance settlement, comprising
12
> [a] stored value payment vehicle (Cash advance transaction or financial institution
> card) issued to a player . . ., a gaming account maintained by casino [] computing
13
> system, and a transaction facilitator comprising . . . which when executed by a
> processor cause the processor to: selectively increasing and decreasing balances []
14
> of the stored value account and the gaming account.

15
**Exhibit F**, '809 Patent File Wrapper, December 20, 2013 Office Action at 3-4.  The Examiner
16
also stated, however, that:

17

18
> [t]he closest prior art Potts [] which discloses a system/method for checkless cash
> advance settlement . . . singularly or in combination fails to disclose the recited
19
> feature: As per claims 1, 10, 17, and 24 'Based at least partially on the player
> identifier, identifying, by the transaction facilitator, a stored value account, . . . and
20
> communicating, by the transaction facilitator, with the issuer processor computing
> system and the gaming computing system to decrease the balance of the stored
21
> value account and increase the balance of the gaming account.'

22

23
*Id.*, March 6, 2014 Office Action at 2-3.  Similarly, during prosecution of each of the applications

24
that issued as the remainder of the Asserted Patents, the Examiner also cited Potts as being the

25
closest prior art and that it 'singularly or in combination fails to disclose the recited features' of

26

certain claims corresponding to each Asserted Patent, including certain of those claims at issue and asserted against Everi.

40.     In the case of the '708 Patent, Potts failed to disclose

[a]s per claims 1, 11 and 18 'identifying, by any of the one or more computing devices, a stored value account based at least partially on the player identifier,…instructing, by any of the one or more computing devices, the issuer processor computing system to decrease the balance the stored value account, and instructing, by any of the one or more computing devise, the casino computing system to increase the balance of the gaming account.'

**Exhibit G**, '708 Patent File Wrapper, February 17, 2015 Office Action at 2-3.

41.     For the '123 Patent, Potts failed to disclose:

[a]s per claims 1 and 14 'based at least partially on the player identifier, identifying a stored value account,…receiving a funding instruction…wherein the funding instruction was entered into the remote computing device, and causing a decrease of the balance of the stored value account and an increase of the balance of the gaming account.' As per claim 8 'receiving a load request, wherein the load request is initiated at an application executed on a remote computing device and comprises a request to fund a gaming account with player funds held by a stored value account associated with a stored value payment vehicle, wherein the gaming account has a balance amount, and causing an increase of the balance amount of the gaming account based an amount of funds requested in the load request.'

**Exhibit H**, '123 Patent File Wrapper, September 10, 2015 Office Action at 2-3.

42.     For the '176 Patent, Potts failed to disclose:

[a]s per claims 1, 8 and 14 'receiving by the one or more computing devices a funding instruction, wherein the funding instruction identifies a balance amount to be electronically transferred from the stored valued account to the gaming account, wherein the funding instruction was entered into the remote computing device, and responsive to receiving a funding instruction, causing by the one or more computing devices a decrease of the balance of the stored value account and an increase of the balance of the gaming account.'

**Exhibit I**, '176 Patent File Wrapper, August 30, 2016 Office Action at 2-3.

43.     In the case of the '926 Patent, Potts failed to disclose:

[a]s per claims 1, 8 and 14 'associating in computer memory of the one or more computing devices, a stored value account of a player with player credentials for a gaming environment, wherein the stored value account is an open-loop account that holds a balance of funds maintained by a host computing system on a bank card network, wherein funds held in the stored value account are usable for payment transactions at any of a plurality of merchants associated with the bank card network; based at least partially on the player credentials for the player entered into a remote computing device; identifying the stored value account associated with the player credentials; and responsive to receiving a funding instruction entered into the remote computing device and via closed-loop transactions, causing by the one or more computing device a decrease of the balance of funds of the stored value account and an increase of the balance of a gaming account.'

**Exhibit J**, '926 Patent File Wrapper, June 7, 2017 Office Action at 2-3.

44.     Computer processing and network communication problems were well documented at the time of invention and with respect to gaming accounts.  The Examiner of the Asserted Patents may reasonably be assumed to be a skilled artisan having been charged with the examination of the applications that became the Asserted Patents.  The Examiner for the Asserted Patents determined (for at least these reasons as well as those more thoroughly discussed in the prosecution history of the Asserted Patents), that it was not well-known, routine, or conventional to utilize the solutions presented in and claimed by the Asserted Patents.  The claimed solutions of the Asserted Patents go beyond that which is disclosed in the prior art and which might otherwise be considered well-understood, routine, or conventional.  The Asserted Patents, having been distinguished from the prior art, cannot be considered well understood, routine, or conventional.

### E.     Everi's Infringement of the Asserted Patents

45.     Everi directly infringes claims of the Asserted Patents by making, using, offering for sale, and selling hardware and software in the United States, or combinations of the same, that utilize the non-wagering account administration and gaming balance transfer solutions of the Asserted Patents.  Everi provides *CashClub Wallet*.  *CashClub Wallet* is a software product

released in 2020 that allows patrons at participating gaming establishments to store payment credentials. *CashClub Wallet* further stores and transfers funds for their use in connection with the participating gaming establishment. *CashClub Wallet* is Everi's fully cashless and contactless integrated mobile solution. A more detailed description of Everi's *CashClub Wallet* product can be found on its webpages at: https://www.everi.com/fintech/cashclub-wallet/ ("*CashClub Wallet* Webpage"), https://www.everi.com/everi-cashclub-wallet-terms-conditions/ ("*CashClub Wallet* T&C"), and https://ir.everi.com/investor-relations/investor-news/news-details/2020/Everi-Highlights-Roadmap-for-Cashless-Gaming-Industry-Leadership/default.aspx ("*CashClub* August 12, 2020 Press Release"). A true and correct copy of each of the foregoing webpages is attached hereto, respectively, as **Exhibits K, L, and M**.

46.     The *CashClub Wallet* mobile application provides identity security and payment credentials allowing deposits and withdrawals from personal financial accounts of a casino patron player. Funds can be loaded onto any mobile device with *CashClub Wallet*. When a user enters their login credentials (such as their PIN and/or password) to open their *CashClub Wallet*, a dashboard interface identifies the account associated with those credentials to access the associated stored value payment vehicle.

47.     Once funds are loaded onto *CashClub Wallet*, players can tap to wirelessly load funds directly onto the gaming device. Players may fund their stored value account from casino winnings such as chips, tickets, and jackpot funds. After a player is finished playing a certain gaming device, they may initiate a request to load remaining funds back into the *CashClub Wallet*, move to another game, cash out through an Everi kiosk, or deposit directly back to their personal financial accounts via ACH. Everi's *CashClub Wallet* can be used not only at gaming establishments, but also at bars, restaurants, and other non-gaming amenities.

48.     Everi indicates that it may use information provided by users to offer promotions on behalf of the participating gaming establishment or third parties.  Everi also indicates that it may use information provided by users to verify their eligibility for transactions.  Everi also indicates that it may use such information for analytics and reporting purposes.

49.     *CashClub Wallet* relies on systems and methods that are capable of administration of non-wagering accounts with gaming environments and association of balance transfers with gaming environments.  *CashClub Wallet* allows a player to selectively transfer funds between various types of gaming accounts and a stored value account.  *CashClub Wallet* concurrently allows a gaming establishment to track player activity and player purchase activity both inside and outside the casino.  *CashClub Wallet* utilizes the technical solutions claimed in the Asserted Patents to eliminate the need for cash and cash replenishment at gaming establishments.  *CashClub Wallet* also allows for a gaming establishment to capture valuable player wagering and non-wagering activity based on a single mobile device platform.

50.     Everi has announced implementation of "digital wallets" across various gaming properties including, but not limited to, WinStar World Casino and Resort.  Everi's announcements related to WinStar and other properties can be found attached as **Exhibits N, O, P, and Q**.    Everi has also confirmed that it has relied upon these solutions—the same solutions described and claimed in the Asserted Patents—to drive integration of *CashClub Wallet* into various casino management and player tracking systems.  Everi's announced integrations can be found attached as **Exhibits R, S, and T**.

51.     Everi has thus directly infringed the Asserted Patents by making, using, selling, and offering to sell the hardware, software, combinations thereof, and mobile software products known as *CashClub Wallet* (the "Accused Products").  The Accused Products utilize administration of non-wagering accounts with gaming environments, association of balance transfers with gaming

environments, and capture of player wagering and non-wagering activity to obtain significant benefits of the Asserted Patents' innovations. Sightline is entitled to recover from Everi the damages adequate to compensate for such infringement, which have yet to be determined.

## IV.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### INFRINGEMENT OF '809 PATENT

52.     Sightline incorporates the above paragraphs as though fully set forth herein.

53.     In violation of 35 U.S.C. § 271, Everi has directly and/or indirectly infringed at least claims 17, 18, 19, 20 and 22 of the '809 Patent, literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell the Accused Products in the United States.

54.     Claim 17 of the '809 Patent is an independent claim and exemplary of the infringement taking place and complained of by Sightline. Claim 17 recites as following: A computer-based method of funding an account associated with a stored value payment vehicle.

55.     Everi's *CashClub Wallet* performs a computer-based method of funding an account associated with a stored value payment vehicle. *CashClub* uses a computer-based funding method wherein a user can fund their account on their mobile device or other electronic computer-based device through the *CashClub Wallet* mobile application.  The Accused Products include a stored value payment vehicle. The account being funded is associated with the stored value payment vehicle. Everi states that "[t]he CashClub Wallet App provides identity security and payment credentials allowing deposits and withdrawals from the player's personal financial accounts. Funds can be loaded onto any mobile device with CashClub Wallet." *See* Ex. K, *CashClub Wallet* webpage, Video at 1:06 (as of September 30, 2021). Everi includes in Ex. L, *CashClub Wallet* T&C:

5. ACCESSING FUNDS IN THE CASHCLUB WALLET ACCOUNT
To access your CashClub Wallet Account, you will need to designate a secure PIN. You may change your PIN at the designated CashClub Wallet Services desk within the Participating Casino. Your PIN together with your Participating Casino Player Card or the App are required to access your CashClub Wallet Account.

We require certain minimum information in order to open and maintain a CashClub Wallet Account. This includes, but is not limited to, your full name, date of birth, mailing address, mobile phone number, email address, and a valid casino issued player's club account number for the Participating Casino offering CashClub Wallet Services (a "Participating Casino Players Card"). Federal law requires us to obtain, verify, and record information that identifies each person who opens a CashClub Wallet Account and comply with certain federal transaction reporting requirements that are applicable to us. Accordingly, when you register your CashClub Wallet Account, we will also ask you for certain additional information such as your street address, date of birth, Social Security number, and other information that will allow us to identify you such as a valid State driver's license or other valid governmental identifying documents. If

The CashClub Wallet Account may only be used in conjunction with the Participating Casino offering the Services, and may only be accessed at the Participating Casino or certain designated authorized locations, and/or through the CashClub Wallet mobile application (the "App") as updated from time to time, loaded onto your personal mobile device (your "Registered Mobile Device"), and which may only be utilized from eligible geographic locations. Although the App is not required to use the Services, you agree that if you choose not to install the App, you must visit the Participating Casino to view your transaction history and account balances, enroll accounts, and conduct other activities through the CashClub Wallet Account.

56.     Claim 17 of the '809 Patent further recites: receiving, by a casino computing system, a load request initiated by a player, wherein the load request comprises a request to load player-sourced funds to a stored value account, wherein the stored value account has a first available balance amount associated with any of a stored value payment vehicle and a player identifier."

57.     The Accused Products, by a casino computing system, receives a load request initiated by a player. The load request comprises a request to load player-sourced funds to a stored value account.  The Accused Products communicate, by the casino computing system, with an issuer processor computing system to increase the first available balance amount of the stored value account to a second available balance amount based on a total value of funds to be loaded. Everi states that "[o]nce funds are loaded onto the *CashClub Wallet*, patrons can tap to wirelessly load funds directly onto the gaming device." *See* Ex. K, *CashClub Wallet* webpage, Video at 1:15. The reverse is also true. That is, when the player has funds on the gaming device, they may redeem those funds by initiating a load request. "When patrons cash out, they select 'Redeem' and tap the gaming device. The remaining funds are loaded back into the *CashClub Wallet*. Patrons can keep

funds in their *CashClub Wallet*, move to another game, cash out through an Everi kiosk, or deposit directly back to their personal financial accounts via ACH." *Id.*, Video at 1:35. By entering a player's identifying information to access *CashClub Wallet*, Everi identifies an account balance associated with the player. *See* Ex. L, *CashClub Wallet* T&C. A player must enter their designated secure PIN to access their *CashClub Wallet* and to identify the stored value account balance.

58.    Claim 17 of the '809 Patent further recites: communicating, by the casino computing system, with an issuer processor computing system to increase the first available balance amount of the stored value account to a second available balance amount based on a total value of funds to be loaded.

59.    Everi's Accused Products communicate, by the casino computing system, with an issuer processor computing system to increase the first available balance amount of the stored value account to a second available balance amount based on a total value of funds to be loaded. When a player taps their mobile device to a casino gaming system communication is initiated between the casino computing system of the casino game and the *CashClub Wallet* mobile application on the player's mobile device. *See* Ex. K, *CashClub Wallet* webpage, Video at 1:05. The player then enters the amount to transfer to their stored value account thereby increasing the first available balance amount to a second available balance amount by that amount. *Id.*, Video at 1:06-10.

60.    As of filing of this complaint, Everi has infringed and continues to infringe the '809 Patent under 35 U.S.C. § 271(a), directly, literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States the Accused Products, during the term of the '809 Patent.  This infringement includes at least claim 17 as illustrated above.  This infringement further includes claims 18, 19, 20, and 22.

61.     Everi's actions and infringement of the '809 Patent are without license or authorization from Sightline.

62.     Everi's acts of infringement have caused Sightline to suffer damages. Sightline is entitled to and seeks to recover from Everi pursuant to 35 U.S.C. § 284 the damages it sustained as a result of Everi's wrongful actions in an amount subject to proof at trial, and in no event less than a reasonable royalty, together with interest and costs.

## SECOND CAUSE OF ACTION
## INFRINGEMENT OF '708 PATENT

63.     Sightline incorporates the above paragraphs as though fully set forth herein.

64.     In violation of 35 U.S.C. § 271, Everi has directly and/or indirectly infringed at least claims 18, 19, and 20 of the '708 Patent, literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell the Accused Products in the United States.

65.     Claim 18 of the '708 Patent is an independent claim and exemplary of the infringement taking place and complained of by Sightline. Claim 18 recites as follows: A system for a gaming environment.

66.     Everi's *CashClub Wallet* and its associated hardware and software provide a system for a gaming environment. Everi states that "Everi solves the challenges of bringing additional cash funds onto the cash floor with a multi-channel view, which allows for greater operational efficiency, responsible gaming support, additional revenue streams, all while improving customer satisfaction and client support. *CashClub Wallet* provides complete enterprise of solutions, which includes retail operations and integrates with the resort's custom apps. Everi brings unprecedented solutions for casino operators embracing a cashless solution for today's customer base." *See* Ex. K, *CashClub* webpage, Video at 2:08. Everi further states that *CashClub* is "[a] secure, PCI Certified, FDIC Insured, AML Payment Engine for digital payments. CashClub Wallet is a mobile, cashless, and loyalty application that provides an omnichannel experience throughout the casino

resort. CashClub Wallet is easily connected to your Everi payment products, which include ATM Kiosk Modules such as QuikTicket, Check Cashing, and credit card advances." *Id*., Video at 0:52.

67.     The system in Claim 18 of the '708 Patent further comprises of: a stored value payment vehicle issued to a player, wherein funds accessible by the stored value payment vehicle are maintained in a stored value account and are accessible through a payment network.

68.     Everi's Accused Products include a stored value payment vehicle issued to a player. The stored value payment vehicle includes a stored value account known as *CashClub Wallet*. Players signup for Everi's *CashClub Wallet* by downloading the *CashClub Wallet* mobile application and entering login credentials, such as their email address, a PIN number and/or password. *See* Ex. L, *CashClub Wallet* T&C. Once they have signed up, they are issued a stored value payment vehicle. Funds are accessible through a payment network such as MasterCard, Visa, Discover, etc. Players may access funds through the *CashClub Wallet* mobile application by entering their credentials. *CashClub* maintains player credentials. *See* Ex. K, *CashClub* webpage, Video at 1:06.

69.     The system in Claim 18 of the '708 Patent further comprises of: a gaming account to hold funds for the player.

70.     Everi's Accused Products include a gaming account to hold funds for the player. Everi states that "[o]nce funds are loaded onto the *CashClub Wallet*, patrons can tap to wirelessly load funds directly onto the gaming device." *Id*., Video at 1:15.

71.     The system in Claim 18 of the '708 Patent further comprises of: a loyalty account assigned to the player, wherein the loyalty account is maintained by a customer management system, wherein the loyalty account assigned to the player is associated with the stored value account.

72.     Everi's Accused Products include a loyalty account assigned to the player. The loyalty account assigned to the player is maintained by a customer management system, such as a casino computing system. Maintenance of the loyalty account may include tracking transactions made at the casino.  In this way, the loyalty account is associated with the stored value account because, for example, funds spent or earned by a player through playing a slot machine are tracked by the loyalty account. Everi includes on its Mobile webpage:

Bringing your player loyalty program to the palm of your guests' hands is possible through Everi's loyalty mobile app. A uniquely designed application that is available on iOS and Android allows you to interact and engage with your guests regardless of their location.

The loyalty app enables the delivery of promotions and offers directly to your guests' mobile devices, allowing them to view and activate drawings and other promotions and receive location-based rewards when they are at your casino. The loyalty app also allows your guests to view their account information, including tier status and point levels, at any time. The loyalty app supports integration with other Everi products such as CashClub Wallet®.

**Core elements of the loyalty mobile app include:**
• Fully customizable: tailored to incorporate your branding and the look and feel of your property
• Integrated control panel: deploy promotions to both the kiosk and the app through integration with the loyalty control panel
• Content management: manage content for all your property amenities such as restaurants, hotels, and slot machines via the control panel's content management tool

The webpage can be found at: https://www.everi.com/fintech/loyalty/mobile/. A true and correct copy of the webpage is attached hereto as **Exhibit U**.

73.     The system in Claim 18 of the '708 Patent further comprises of: at least one processor and non-transitory computer readable medium having instructions stored thereon which when executed by a processor cause the processor to: selectively cause the funds maintained in the stored value account to be decreased; and selectively cause the funds held by the gaming account to be increased."

74.     Everi's Accused Products include at least one processor and non-transitory computer readable medium having instructions stored thereon which get executed by a processor. Everi includes in Ex. L, *CashClub Wallet* T&C:

> For each load transaction you submit through the Services, you authorize us to charge the funding method you designate in the amount that you specify. You authorize us to transmit the transaction information including your card number or bank account number to our third-party payment processors, or to access your funds held with a Trusted System Provider (as further defined in these Terms). You authorize us to collect and store information related to the transaction.

Through the *CashClub Wallet* mobile application, which includes software (i.e., non-transitory computer readable medium), players may make requests to load or transfer funds, for example, and such instructions get executed by a processor. When a player loads funds onto a gaming device, the funds maintained in the stored value account are decreased by the amount selected by the player and placed onto the gaming device. When a player loads funds onto a gaming device, the funds held by the gaming account are increased by the amount selected by the player.

75.     As of filing of this complaint, Everi has infringed and continues to infringe the '708 Patent under 35 U.S.C. § 271(a), directly, literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States the Accused Products, during the term of the '708 Patent.  This infringement includes at least claim 18 as illustrated above.  This infringement further includes claims 19 and 20.

76.     Everi's actions and infringement of the '708 Patent are without license or authorization from Sightline.

77.     Everi's acts of infringement has caused Sightline to suffer damages. Sightline is entitled to and seeks to recover from Everi pursuant to 35 U.S.C. § 284 the damages it sustained as a result of Everi's wrongful actions in an amount subject to proof at trial, and in no event less than a reasonable royalty, together with interest and costs.

**THIRD CAUSE OF ACTION**
**INFRINGEMENT OF '123 PATENT**

78.     Sightline incorporates the above paragraphs as though fully set forth herein.

79.     In violation of 35 U.S.C. § 271, Everi has directly and/or indirectly infringed at least claims 1, 8, 9, 11, and 13 of the '123 Patent, literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing the Accused Products in the United States.

80.     Claim 8 of the '123 Patent is an independent claim and exemplary of the infringement taking place and complained of by Sightline. Claim 8 recites as follows: A computer-based method of funding an account associated with a player, the method performed by a transaction facilitator computing system comprising instructions stored in a memory, which when executed by a processor of the transaction facilitator computing system, cause the transaction facilitator computing system to perform the method.

81.     *CashClub Wallet* and its associated hardware and software perform a computer-based method of funding an account associated with a player. On Ex. L, *CashClub Wallet* T&C, Everi states:

> CashClub Wallet™ services ("CashClub Wallet Services" or "Services") allow patrons at participating licensed gaming establishments (each, a "Participating Casino"), to store payment credentials and to store and transfer funds for their use in connection with the Participating Casino.

The funded account is associated with a player using the player's unique login credentials. *See id*., Section 5.  The Accused Products include a transaction facilitator computing system comprising instructions stored in a memory. The transaction facilitator computing system includes a processor and may also include payment gateways, acquirer processors, and other types of payment intermediaries. The transaction facilitator computing system also includes software (*i.e.*, instructions stored in a memory). The transaction facilitator computing system may be at least in part the *CashClub Wallet* mobile application. Transactions are facilitated at least in part through

the application.  The Accused Products use a transaction facilitator computing system comprising instructions stored in a memory, which when executed by a processor of the transaction facilitator computing system, cause the transaction facilitator computing system to perform the method.  The transaction facilitator computing system may comprise the *CashClub Wallet* application.  For example, on Ex. L, *CashClub Wallet* T&C, Everi further states:

> The CashClub Wallet Account may only be used in conjunction with the Participating Casino offering the Services, and may only be accessed at the Participating Casino or certain designated authorized locations, and/or through the CashClub Wallet mobile application (the "App") as updated from time to time, loaded onto your personal mobile device (your "Registered Mobile Device"), and which may only be utilized from eligible geographic locations. Although the App is not required to use the Services, you agree that if you choose not to install the App, you must visit the Participating Casino to view your transaction history and account balances, enroll accounts, and conduct other activities through the CashClub Wallet Account.

> The CashClub Wallet Account may only be used in conjunction with the Participating Casino offering the Services, and may only be accessed at the Participating Casino or certain designated authorized locations, and/or through the

> Your use of the Services and the App are subject to these Terms, as updated from time to time, and other terms and conditions that Everi may establish from time to time. For example, you will only be able to use your CashClub Wallet Account at the Participating Casino and at certain merchants designated by the Participating Casino who are authorized to accept transfers through the Services as a payment method.

> For each load transaction you submit through the Services, you authorize us to charge the funding method you designate in the amount that you specify. You authorize us to transmit the transaction information including your card number or bank account number to our third-party payment processors, or to access your funds held with a Trusted System Provider (as further defined in these Terms). You authorize us to collect and store information related to the transaction.

82.    The method of claim 8 of the '123 Patent further comprises of: receiving a load request, wherein the load request is initiated at an application executed on a remote computing device and comprises a request to fund a gaming account with player funds held by a stored value account associated with a stored value payment vehicle, wherein the gaming account has a balance amount;

83.    The Accused Products of Everi receive a load request, wherein the load request is initiated at an application executed on a remote computing device. The *CashClub Wallet*

application may receive request to load funds through a remote computing device, such as a mobile device. For example, a player may add credit cards and/or bank account information to the *CashClub Wallet* mobile application. When the player logs into the application, they may request to load funds to the *CashClub Wallet*. The following images are from Everi's video (0:53-0:59) on Everi's *CashClub Wallet* webpage. Ex. K.

   

Alternatively, once funds are in *CashClub Wallet*, a player may initiate another load request at an application executed through the mobile application and/or on a remote computing device located inside a casino facility (*e.g.*, at a slot machine gaming device). The load request comprises a request to fund a gaming account with player funds held by a stored value account associated with a stored value payment vehicle, wherein the gaming account has a balance amount. Players signup for *CashClub Wallet* by, for example, downloading the *CashClub Wallet* mobile application and entering login credentials, such as their email address, a PIN number and/or password. *See e.g.,* Ex. L, *CashClub Wallet* T&C. Once signed up, the stored value payment vehicle is enabled. The gaming account has a balance amount. When playing a casino game, such as a slot machine, there is a gaming account associated with the game, and that account has a balance amount (*i.e.*, a ledger of funds available for playing).

84.     The method of claim 8 of the '123 Patent further comprises of: causing an increase of the balance amount of the gaming account based on an amount of funds requested in the load request.

85.     The Accused Products cause an increase of the balance amount of the gaming account based on an amount of funds requested in the load request. When a player requests to load funds to the gaming account, the balance amount is increased by the amount the player requested to load. The following images are taken from Everi's video (1:11-17) on its *CashClub Wallet* webpage. Ex. K.





86.     As of filing of this complaint, Everi has infringed and continues to infringe the '123 Patent under 35 U.S.C. § 271(a), directly, literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States the Accused Products, during the term of the '123 Patent.  This infringement includes at least claim 8 as set forth above.  This infringement further includes claims 1, 9, 11, and 13.

87.     Everi's actions and infringement of the '123 Patent are without license or authorization from Sightline.

88.     Everi's acts of infringement has caused Sightline to suffer damages. Sightline is entitled to and seeks to recover from Everi pursuant to 35 U.S.C. § 284 the damages it sustained as a result of Everi's wrongful actions in an amount subject to proof at trial, and in no event less than a reasonable royalty, together with interest and costs.

**FOURTH CAUSE OF ACTION**
**INFRINGEMENT OF '176 PATENT**

89.     Sightline incorporates the above paragraphs as though fully set forth herein.

90.     In violation of 35 U.S.C. § 271, Everi has directly and/or indirectly infringed at least claims 1, 2, 4, 5, 7, 8, 9, 10, 14, 15, 16, 17, 19, and 20 of the '176 Patent, literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing the Accused Products in the United States.

91.     Claim 1 of the '176 Patent is an independent claim and exemplary of the infringement taking place and complained of by Sightline. Claim 1 recites as follows: A computer-based method of electronic fund transfer between a stored value account and a gaming account, the method performed by one or more computing devices comprising instructions stored in a memory, which when executed by one or more processors of the one or more computing devices, cause the one or more computing devices to perform the method.

92.     *CashClub Wallet* and its associated hardware and software perform a computer-based method of electronic fund transfer between a stored value account and a gaming account, the method performed by one or more computing devices comprising instructions stored in a memory, which when executed by one or more processors of the one or more computing devices, cause the one or more computing devices to perform the method. *See* Ex. L, *CashClub Wallet* T&C. *CashClub*'s method is performed by one or more computing devices comprising instructions stored in a memory. The computing device(s) used in the method includes software (*i.e.*, instructions stored in a memory) and may also include payment gateways, acquirer processors, and other types of payment intermediaries. The software may be contained, at least in part, in the *CashClub Wallet* mobile application. Funding transactions are facilitated at least in part through the application. The computing device(s) include at least one processor. Executing the instructions stored in a memory by one or more processors of the one or more computing devices causes the one or more computing devices to perform the method.

93.     The method of claim 1 of the '176 Patent further comprises: receiving by the one or more computing devices player credentials for a player, wherein the player credentials are associated with a gaming account having a balance, wherein the player credentials were entered into a remote computing device.

94.     The Everi Accused Products receive by the one or more computing devices player credentials for a player.  The Accused Products allow a player to add their credentials, such as their name, payment and/or funding methods, and other personal information. For example, a player may add credit cards and/or bank account information. *See* Ex. L, *CashClub Wallet* T&C. Players also provide additional credentials, such as a PIN and/or password.  The Accused Products can store these credentials, including the payment and funding credentials, and associate them with a player identifier and a gaming account with a balance. The player credentials are entered into a remote computing device. *See* Ex. K, *CashClub Wallet* webpage, Video at 0:52-0:59, 0:07-0:10, 0:32. The remote computing device through which player credentials are entered may be, for example, a player's mobile device, a tablet computer, a desktop computer, a laptop computer, a casino gaming device, a wearable computing device, a casino kiosk, or an ATM.

95.     The method of claim 1 of the '176 Patent further comprises: based at least partially on the player credentials, identifying by the one or more computing devices a stored value account associated with the player, wherein the stored value account associated with the player maintains an amount of funds available for use by the player.

96.     The Accused Products of Everi, based at least partially on the player credentials, identify by the one or more computing devices a stored value account. By entering a player's identifying information to access a *CashClub Wallet*, the Accused Products identify a stored value account. *See* Ex. L (*CashClub Wallet* T&C). A player must enter, through a computing device, their designated secure PIN to access their *CashClub Wallet*.  The computing device then identifies the stored value account using the credentials.

97.     The method of claim 1 of the '176 Patent further comprises: receiving by the one or more computing devices a funding instruction, wherein the funding instruction identifies a

balance amount to be electronically transferred from the stored valued account to the gaming account, wherein the funding instruction was entered into the remote computing device.

98.    The Accused Products receive by the one or more computing devices a funding instruction, . . . wherein the funding instruction was entered into the remote computing device. Through the *CashClub Wallet* mobile application, for example, a player may send a funding instruction, which is received by at least one of the computing devices. *See* Ex. K, *CashClub Wallet* webpage, Video at 1:10. For example, a player may enter a funding instruction into their mobile device, which is received by the mobile device. The instruction may also be received by and/or entered into, for example, a casino gaming device.

99.    The method of claim 1 of the '176 Patent further comprises: responsive to receiving a funding instruction, causing by the one or more computing devices a decrease of the balance of the stored value account and an increase of the balance of the gaming account.

100.    In response to receiving a funding instruction, the Accused Products cause by the one or more computing devices: 1) a decrease of the balance of the stored value account and 2) an increase of the balance of the gaming account. The following images were taken from Everi's *CashClub Wallet* webpage, Video at 1:11. Ex. K.



101.    Everi has infringed and continues to infringe the '176 Patent under 35 U.S.C. § 271(a), directly, literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States the Accused Products, during the term of the '176 Patent.  This infringement includes at least claim 1 as illustrated above.  This infringement further includes claims 2, 4, 5, 7, 8, 9, 10, 14, 15, 16, 17, 19, and 20.

102.    As of filing of this complaint, Everi's actions and infringement of the '176 Patent are without license or authorization from Sightline.

103.    Everi's acts of infringement has caused Sightline to suffer damages. Sightline is entitled to and seeks to recover from Everi pursuant to 35 U.S.C. § 284 the damages it sustained as a result of Everi's wrongful actions in an amount subject to proof at trial, and in no event less than a reasonable royalty, together with interest and costs.

## FIFTH CAUSE OF ACTION
## INFRINGEMENT OF '926 PATENT

104.    Sightline incorporates the above paragraphs as though fully set forth herein.

105.    In violation of 35 U.S.C. § 271, Everi has directly and/or indirectly infringed at least claims 1 of the '926 Patent, literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing the Accused Products in the United States that use the method recited in claim 1 of the '926 Patent.

106.    Claim 1, 2, 4, 5, 7, 8, 9, 10, 12, 14, 15, 16, 17, 19, and 20 of the '926 Patent is an independent claim and exemplary of the infringement complained of by Sightline. Claim 1 recites as follows: A computer-based method of electronic fund transfer between a stored value account and a gaming account, the method performed by one or more computing devices comprising instructions stored in a memory, which when executed by one or more processors of the one or more computing devices, cause the one or more computing devices to perform the method.

107.   *CashClub Wallet* and its associated hardware and software perform a computer-based method of electronic fund transfer between a stored value account and a gaming account, the method performed by one or more computing devices comprising instructions stored in a memory, which when executed by one or more processors of the one or more computing devices, cause the one or more computing devices to perform the method. *See* Ex. L, *CashClub Wallet* T&C and *CashClub Wallet* webpage, Video at 1:06.

108.   The method of claim 1 of the '926 Patent further comprises: associating in computer memory of the one or more computing devices, a stored value account of a player with player credentials for a gaming environment, wherein the stored value account is an open-loop account that holds a balance of funds maintained by a host computing system on a bank card network, wherein funds held in the stored value account are usable for payment transactions at any of a plurality of merchants associated with the bank card network.

109.   The Accused Products associate in computer memory of the one or more computing devices, a stored value account of a player with player credentials for a gaming environment.  The Accused Products allow a player to add their credentials, such as their name, payment and/or funding methods, and other personal information. For example, a player may add credit cards and/or bank account information. The Accused Products store these credentials, including the payment and funding credentials, and associate them with a player identifier and a gaming account with a balance. *See* Ex. K, *CashClub Wallet* webpage, Video at 1:06-1:10.

110.   The method of claim 1 of the '926 Patent further comprises: based at least partially on the player credentials for the player entered into a remote computing device, identifying the stored value account associated with the player credentials.

111.     The Accused Products, based at least partially on the player credentials for the player entered into a remote computing device, identify the stored value account associated with the player credentials. *See* Ex. L, *CashClub Wallet* T&C.

112.     The method of claim 1 of the '926 Patent further comprises: responsive to receiving a funding instruction entered into the remote computing device and via closed-loop transactions, causing by the one or more computing devices a decrease of the balance of funds of the stored value account and an increase of the balance of a gaming account.

113.     The Accused Products use closed-loop transactions wherein a consumer can spend funds in a stored value account at particular merchant locations, such as at a particular casino. The Accused Products cause one or more computing devices to have a decrease of the balance of funds of the stored value account and an increase of the balance of a gaming account. *See* Ex. K, *CashClub Wallet* webpage, Video at 1:11.

114.     As of filing of this complaint, Everi has infringed and continues to infringe the '926 Patent under 35 U.S.C. § 271(a), directly, literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States the Accused Products, during the term of the '926 Patent.  This infringement includes at least claim 1 as illustrated above.  This infringement further includes claims 2, 4, 5, 7, 8, 9, 10, 12, 14, 15, 16, 17, 19, and 20.

115.     Everi's actions and infringement of the '926 Patent are without license or authorization from Sightline.

116.     Everi's acts of infringement has caused Sightline to suffer damages. Sightline is entitled to and seeks to recover from Everi pursuant to 35 U.S.C. § 284 the damages it sustained as a result of Everi's wrongful actions in an amount subject to proof at trial, and in no event less than a reasonable royalty, together with interest and costs.

## V.      PRAYER FOR RELIEF

117.    Wherefore, Sightline respectfully requests that this Court enter judgment in its favor against Everi as follows:

        a.   a judgment and award that Everi infringed, either literally and/or under the doctrine of equivalents, each of the Asserted Patents;

        b.   a judgment and order requiring Everi to pay Sightline its damages, costs, and expenses, to which Sightline is due to Everi's infringement;

        c.   a judgment and order requiring Everi to provide an accounting and to pay Sightline supplemental damages, including without limitation, pre-judgment and post-judgment interests; and

        d.   such other and further relief to which it may be entitled.

## VI.      DEMAND FOR JURY TRIAL

118.    Sightline hereby demands trial by jury on all claims and issues so triable.

DATED this 30th day of September 2021.

Respectfully Submitted,

**POLSINELLI P.C.**

By:   /s/  Jonathan R. Spivey

Jonathan Spivey (TXBA No. 24002989)
LaTasha M. Snipe (TX BA No. 24072504)
Michael D. Pegues (TXBA No. 15730600)
POLSINELLI P.C.
1000 Louisiana Street, Suite 6400
Houston, Texas 77002
Tel: (713) 374-1600
Fax: (713) 374-1601
Email: jspivey@polsinelli.com
          tsnipes@polsinelli.com
          mpegues@polsinelli.com


Colby B. Springer (to be admitted *pro hac vice*)
Josh Rayes (to be admitted *pro hac vice*)
Melenie Van (to be admitted *pro hac vice*)
POLSINELLI LLP
Three Embarcadero Center, Suite 2400
San Francisco, California 94111
Tel: (415) 248-2100
Fax: (415) 248-2101
Email: cspringer@polsinelli.com
          rayes@polsinelli.com
          mvan@polsinelli.com


*Counsel for Sightline Payments LLC*