**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| SIGHTLINE PAYMENTS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> EVERI HOLDINGS INC., EVERI PAYMENTS INC., EVERI GAMES HOLDING INC., and EVERI GAMES INC., <br><br> Defendants. | Case No.:  6:21-cv-01015-ADA <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(3) AND 12(B)(6), OR, ALTERNATIVELY, TRANSFER FOR LACK OF VENUE PURSUANT TO 28 USC §1406(A) OR 28 USC §1404(A)**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

STATEMENT OF RELEVANT FACTS .................................................................2

    A.      Plaintiff Has Not Established Venue is Proper for Each Defendant.......................2

    B.      The Relevant Evidence in this Case is Likely Located in the District of Nevada. ..5

    C.      The District of Nevada Has a Local Interest in Hearing This Dispute. ..................7

ARGUMENT ..........................................................................................................8

    A.      The Court Should dismiss or alternatively transfer the action...............................8

          1.      Legal Standards For Dismissal For Lack of Venue Pursuant to Fed. R. Civ. P. 12(b)(3) and Transfer For Lack of Venue Pursuant to 28 U.S.C. § 1406(a) ...............................................................................................................8

          2.      This Court Should Dismiss or Transfer Because Venue is Not Proper for Each Defendant in this District. ...................................................................9

          3.      The Everi Entities Are Not Alter Egos of Each Other................................9

          4.      This Court Should Dismiss Defendants Everi Games and Everi Games Holding For Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6). ..................................................................................................12

    B.      The Court Should Transfer Pursuant to 28 U.S.C. § 1404(a) .............................13

          1.      Legal Standard For Transfer of Venue Pursuant to 28 U.S.C. § 1404(a) ..13

          2.      Venue is Proper in the District of Nevada. ..............................................14

          3.      The Private Interest Factors Favor Transfer. ...........................................15

               a)      The Relative Ease of Access to Sources of Proof Favor Transfer. 15

               b)      The Availability of Compulsory Process to Secure the Attendance of Witnesses Favors Transfer........................................................16

               c)      The Cost of Attendance for Willing Witnesses Favors Transfer...17

               d)      The "Practical Problems" Factor Favors Transfer or is Neutral. ...18

          4.      The Public Interest Factors Overall Favor Transfer. .................................19

                a)      The Administrative Difficulties Flowing from Court Congestion is Neutral or, At Best, Slightly Disfavors Transfer. ..........................19

                b)      The Local Interest in Having Localized Interests Decided at Home Favors Transfer. ........................................................................19

                c)      The Remaining Public Interest Factors Are Neutral.....................20

CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
   358 F.3d 337 (5th Cir. 2004) ........................................................................ 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 12

*Bd. of Regents v. Medtronic PLC*,
   2018 WL 4179080 (W.D. Tex. July 19, 2018) .............................................. 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 12

*Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*,
   441 F. Supp. 819 (N.D. Tex. 1977) ............................................................... 14

*Fintiv, Inc. v. Apple Inc.*,
   2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ................................. 15, 16, 17

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) ..................................................................... 20

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ....................................................... 15, 19, 20

*In re Apple*,
   581 F. App'x 886 (Fed. Cir. 2014) ................................................................ 16

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017) ....................................................................... 8

*In re Dish Network L.L.C.*,
   2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ................................................ 16

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ....................................................... 15, 17, 19

*In re Hulu, LLC*,
   2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ................................................. 17

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) ........................................................... 14, 15, 18

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ..................................................................... 13

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010) ..................................................................... 14

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ........................................................... 14, 17

*In re Volkswagen, Inc.*,
    545 F.3d 304 (5th Cir. 2008) ............................................................ 14, 17, 18, 19

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018) ..................................................................... 8

*Interactive Toybox, LLC v. Walt Disney Co.*,
    2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) ................................... 10, 11, 12

*Moskowitz Family, LLC v. Globus Medical, Inc.*,
    2020 WL 4577710 (W.D. Tex. July 2, 2020) ........................................... 15

*Optic153 LLC v. Thorlabs Inc.*,
    2020 WL 3403076 (W.D. Tex. June 19, 2020) ................................... 9, 10, 11

*Parus Holdings Inc. v. LG Elecs. Inc.*,
    2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) ........................................ 19

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*,
    2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ........................................ 18

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1982) .......................................................................... 14

*Rios v. City of Del Rio*,
    444 F.3d 417 (5th Cir. 2006) ............................................................. 12

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    137 S. Ct. 1514 (2017) ............................................................. 1, 8, 9, 14

*Uniloc 2017 LLC v. Google LLC*,
    2020 WL 3064460 (E.D. Tex. June 8, 2020) .......................................... 18

*Wet Sounds, Inc. v. Audio Formz, LLC*,
    2017 WL 4547916 (W.D. Tex. Oct. 11, 2017) ........................................ 17

*Word to Info, Inc. v. Facebook, Inc.*,
    2015 WL 13870507 (N.D. Tex. Jul. 23, 2015) ........................................ 19

## Statutes

28 U.S.C. §1391(b) ..................................................................... 1, 3, 9

28 U.S.C. §1400(b) ........................................................................ passim

28 U.S.C. §1404(a) ............................................................. 2, 13, 14, 17

28 U.S.C. §1406(a) .......................................................................... 1, 8

35 U.S.C. § 271 ............................................................................ 13

## Rules

Fed. R. Civ. P. 12(b)(3)................................................................... 1, 8

Fed. R. Civ. P. 12(b)(6)............................................................. 1, 12, 13

## INTRODUCTION

Plaintiff Sightline Payments, LLC ("Plaintiff") filed the instant patent infringement action in this judicial district despite failing to establish proper venue for each defendant—Everi Holdings Inc. ("Everi Holdings"), Everi Payments Inc. ("Everi Payments"), Everi Games Holding Inc. ("Everi Games Holding"), and Everi Games Inc. ("Everi Games")(collectively, "Everi" or "Everi Entities"). Plaintiff also incorrectly relies on the general venue statute, 28 U.S.C. §1391(b) to establish venue in this district. It is well known, however, that venue in patent cases is governed exclusively by 28 U.S.C. §1400(b). Venue is not proper in this judicial district for each defendant. Everi Games Holding resides in this judicial district, but the remaining Everi Entities do not meet the patent venue requirements set forth under 28 U.S.C. §1400(b) and *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1518 (2017). Despite this, Plaintiff attempts to impute the presence of Everi Games Holding in this judicial district to the remaining Everi Entities under an alter ego theory. However, as explained further in this motion, Plaintiff's allegations are insufficient to establish that the Everi Entities lack the formal corporate separateness required to treat otherwise separate entities as alter egos. Moreover, only one of the Everi Entities (Everi Payments) sells the accused *CashClub Wallet* product, and there has not been a single sale in this judicial district. Thus, none have committed acts of infringement in this district. Therefore, this Court should dismiss Defendants Everi Holdings, Everi Payments, and Everi Games pursuant to Federal Rule of Civil Procedure 12(b)(3) or transfer this case in the interest of justice to the U.S. District Court for the District of Nevada ("District of Nevada") pursuant to 28 U.S.C. §1406(a). Additionally, this Court should dismiss Defendants Everi Games and Everi Games Holding pursuant to Fed. R. Civ. P. 12(b)(6) because the complaint lacks any well-pled factual allegation that either party committed acts of infringement.

1

Alternatively, this Court should transfer this case to the District of Nevada pursuant to 28 U.S.C. §1404(a) because this action could have been—and should have been—brought in the District of Nevada. Moreover, all of the material physical evidence and documents are located in Nevada; the relevant party and third-party witnesses are located in Nevada; and Nevada has a localized interest in this case. By contrast, there is likely no physical evidence or documents located in this judicial district; no witnesses in this judicial district; and this judicial district has no localized interest, as none of the Everi Entities have committed any alleged acts of infringement in this district, and both the Plaintiff and proper defendant are headquartered in Nevada. As such, this Court should transfer this action to the District of Nevada, where this dispute belongs.

## STATEMENT OF RELEVANT FACTS

### A.   Plaintiff Has Not Established Venue is Proper for Each Defendant.

Plaintiff alleges that Everi's software product *CashClub Wallet* (the "Accused Product") infringes several of Plaintiff's software patents "that allow for cashless transactions used in casino gaming offerings and non-gaming spend." (Complaint, ¶ 19). Allegedly, Plaintiff is the owner of U.S. Patent Nos. 8,708,809 (the "'809 Patent"), 8,998,708 (the "'708 Patent"), 9,196,123 (the "'123 Patent"), 9,466,176 (the "'176 Patent"), and 9,785,926 (the "'926 Patent")(collectively, the "Asserted Patents")(Complaint, ¶¶ 13-17). According to Plaintiff, Everi directly infringed the Asserted Patents by "making, using, selling, and offering to sell […] mobile software products known as *CashClub Wallet*." (Complaint, ¶ 51).

Plaintiff alleges that Everi committed acts of infringement and maintains a regular and established place of business in the Western District of Texas, such that venue is proper in this

judicial district for each of the Everi Entities. (Complaint, ¶¶ 11-12). However, this is not true; venue is not proper for each of the Everi Entities in this judicial district.[1]

- Everi Holdings is a holding company incorporated under the laws of Delaware. (Labay Declaration, ¶2). As is the nature of a holding company, Everi Holdings does not conduct business. (*Id.*).

- Everi Payments is also a Delaware corporation, and is registered to do business in Austin, Texas. (*Id.* at ¶¶3,7). Nonetheless, Everi Payments does not maintain a regular and established place of business in this judicial district as is required under the patent venue statute, 28 U.S.C. § 1400(b). (*Id.* at ¶7). Everi Payments is the only entity that sells the Accused Product, and none of those sales have been directed to or otherwise reached the state of Texas. (*Id.* at ¶8).

- Everi Games Holding, is the only entity incorporated under the laws of Texas. (*Id.* at ¶4). Again, as is the nature of a holding company, Everi Games Holding does not conduct business. (*Id.*).

- Everi Games is also a Delaware corporation, and is registered to do business in Austin, Texas. (*Id.* at ¶5; *see also* Taylor Declaration, ¶3). Everi Games maintains a regular and established place of business in Austin, Texas, but Everi Games has not committed any alleged acts of infringement because it does not make, use, offer to sell, or sell the Accused Product. (Labay Decl., ¶¶5,8; Taylor Decl., ¶3). Everi Games, instead, designs and makes unrelated slot machine games. (Taylor Decl., ¶3).

However, desperate to litigate this action in the Western District of Texas—where there has been a significant uptick in patent litigation over the past several years—Plaintiff concocts a narrative alleging the Everi Entities are alter egos in order to impute venue from Everi Games Holding to the remaining Everi entities. Specifically, Plaintiff alleges "that Defendants Everi Holdings Inc., Everi Payments Inc., Everi Games Holding Inc., and Everi Games Inc.—either

---

[1] Plaintiff seemingly relies on the general venue statute, 28 U.S.C. §1391(b)**Error! Bookmark not defined.**, to establish that venue is proper for the Everi Entities. (Complaint, ¶ 12). However, the general venue statute does not govern this patent infringement action. 28 U.S.C. § 1400(b)**Error! Bookmark not defined.** governs this case, and provides that venue is proper in a patent infringement case where "the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *Id.***Error! Bookmark not defined.***

individually and/or in concert with one another—engaged in each of the complained of acts set forth herein…" (Complaint, ¶ 9). Plaintiff alleges the following evidence establishes that the Everi Entities are alter egos of each other:

- The assets of Everi Holdings Inc. are the issued and outstanding shares of capital stock of Everi Games Holding Inc. and Everi Payments Inc. Everi Games Holding Inc. owns the issued and outstanding shares of capital stock of Everi Games Inc. (Complaint, ¶ 7).

- Everi Holdings Inc. does not nor does it attempt to make any cognizable distinction by and between itself, Everi Payments Inc., Everi Games Holding Inc., and Everi Games Inc. Everi Holdings Inc. refers to itself and "its consolidated subsidiaries" (including Everi Payments Inc., Everi Games Holding Inc., and Everi Games Inc.) as "the 'Company,' we,' us,' and 'our'," in Securities and Exchange Commission filings as recently as its Form 10-Q for the quarterly period ended June 30, 2021. Everi Holdings Inc. states that it "reports its financial performance, and organizes and manages its operations" across both its games and financial transactions business segments. (Complaint, ¶ 7).

- Everi Holdings Inc. publicly refers to, markets, and promotes both itself and its subsidiaries in the collective, including as recently as September 29, 2021. Said reference directly concerns the complained of acts set forth herein. In a press release for the Global Gaming Expo 2021, Everi stated that "Everi Holdings Inc. (NYSE: EVRI) ('Everi' or 'the Company') . . . will showcase its ever-expanding 'Digital Neighborhood' . . . at Global Gaming Expo (G2E) 2021." "Everi's 'Digital Neighborhood,'" according to the September 29, 2021 press release, "represents a complete suite of financial, casino loyalty and compliance products and services that bring commonality and continuity to operator workflows." Everi specifically identified *CashClub Wallet* as integrating and extending "cashless payments throughout the gaming enterprise using traditional, alternative, and mobile technologies." (Complaint, ¶ 8).

Plaintiff misrepresents that Everi's 2021 10-Q filing (attached as **Exhibit 1**) does not distinguish the entities when, in fact, the 2021 10-Q separates the Everi Entities. The Everi Entities are specifically and distinctly defined as different entities in the 2021 10-Q as follows:

> Everi Holdings Inc. ("Everi Holdings," or "Everi") is a holding company, the assets of which are the issued and outstanding shares of capital stock of each of Everi Payments Inc. ("Everi FinTech" or "FinTech") and Everi Games Holding Inc., which owns all of the

> issued and outstanding shares of capital stock of Everi Games Inc. ("Everi Games" or "Games"). Unless otherwise indicated, the terms the "Company," "we," "us," and "our" refer to Everi Holdings together with its consolidated subsidiaries."

(Ex. 1). Moreover, the 2021 10-Q does not state that Everi Holdings "'reports its financial performance, and organizes and manages its operations' across both its games and financial transactions business segments," as alleged in the Complaint. Everi's 2021 10-Q, instead, specifically states that, ""Everi reports its financial performance, and organizes and manages its operations, across *the following two business segments*: (i) Games and (ii) FinTech." (Ex. 1, emphasis added). The 2021 10-Q report then distinguishes and defines the separate Everi Games and Everi FinTech business segments. (Ex. 1). As such, the statements in Everi's 2021 10-Q report do not evidence a lack of corporate formality between the Everi Entities.

There is no factual allegation, however, that either Everi Games or Everi Games Holding has made, used, offered for sale, or sold the Accused Product. (*See generally* Complaint). As discussed in further detail later in this motion, Plaintiff's alter ego allegations are not sufficient, even when taken as true, to establish that the entities are alter egos and, thus, there are no well pled facts establishing that Everi Games or Everi Games Holding have committed infringement.

### B.     The Relevant Evidence in this Case is Likely Located in the District of Nevada.

Las Vegas, Nevada is the gaming capital of the world. As this case is a dispute between two Nevada gaming companies regarding casino gaming software, it naturally follows that venue would be proper in the District of Nevada where this matter should be litigated. Indeed, Everi's corporate headquarters are in Nevada, and the entity responsible for the Accused Product, Everi Payments, also has its principal place of business in Nevada. (Labay Decl., ¶¶2-3;8). Moreover, Plaintiff is a Delaware LLC with its headquarters in Nevada. (Complaint, ¶ 1).

In addition, the material physical and documentary evidence for Everi is located in Nevada. Specifically, Everi's source code, financial information, and customer information is all located in Nevada. (Labay Decl., ¶10; Newsom Declaration, ¶5). Marketing documents are also stored on Everi's internal server located in Nevada. (Simmons Declaration, ¶5) Moreover, the Accused Product is also located in Nevada. (Newsom Decl., ¶5).

It is also likely that that key documentary and physical evidence, as well as material party witnesses, belonging to Plaintiff are located in Nevada. Plaintiff recently announced partnerships with third-parties Konami Gaming, Inc. ("Konami") and Resorts World Las Vegas ("Resorts World"). Specifically, Plaintiff partnered with Konami, "to deliver cashless gaming solutions through Sightline's Play+ digital payments technology and Konami's SYNKROS® casino management system." (Sightline Payments and Konami Gaming, Inc. Press Release, attached as **Exhibit 2**). The announced partnership is implemented at Resorts World located in Las Vegas, Nevada allowing patrons to "pay for gaming and nongaming activities onsite without using cash." (Ex. 2; *see also* All Eyes Are On Sightlines' Cashless Offerings at Resorts World Las Vegas Press Release, attached as **Exhibit 3**). As such, it is likely that key documentary and physical evidence, as well as material party witnesses, as a result of these partnerships, are located in Nevada.

Moreover, all witnesses believed to play a relevant role in this case are likely located in Nevada, and none are believed to be located in Texas. Specifically, none of the individuals responsible for developing the Accused Product are in Texas, and instead in Las Vegas, Nevada. (Newsom Decl., ¶4). Additionally, Everi employees knowledgeable about marketing and sales are in Las Vegas, Nevada. (Simmons Decl., ¶4).  Similarly, Mr. Mark F. Labay who is knowledgeable about Everi's financials, also lives and works in Las Vegas, Nevada. (Labay Decl., ¶15).

Relevant third parties are also all likely to reside in Nevada. For example, the inventors of the Asserted Patents—Kirk E. Sanford ("Sanford"), Thomas M. Sears ("Sears"), and Omer Sattar ("Sattar")—are each listed as located in Nevada. (*See* Complaint Exhibits A-E). Sanford is believed to be a key third party witness in this case. (Labay Decl., ¶11). Sanford served as CEO of Everi Holding's predecessor company, Global Holdings, then left and founded Sightline Payments, LLC, or Plaintiff. (*Id.* at ¶13). Sanford served as Plaintiff's CEO, but recently retired and is believed to reside in Las Vegas, Nevada. (*Id.* at ¶11-12). Sanford is the lead inventor of the Asserted Patents and thus, is likely to have key testimony regarding the claims in this case. (*Id.* at ¶12; s*ee also* Complaint Exhibits A-E). Additionally, Mike LeStrange ("LeStrange"), Managing Principal for MMLS, LLC, is believed to be another key third party witness in this case. (LeStrange Declaration). LeStrange is a consultant who was involved with the design and integration of the Accused Product, and is thus likely to have key testimony regarding the claims in this case. (LeStrange Decl., ¶3). LeStrange resides in Las Vegas, Nevada, and is unwilling to travel to this judicial district to provide testimony in any trial or other proceeding in this matter. (*Id.* at ¶4).

Furthermore, it is likely that employees and/or agents of Plaintiff's partners, Konami and Resorts World, will also be key third party witnesses. Konami is a Las Vegas based entity that designs and manufactures "slot machines and casino management systems for the global gaming market." (Ex. 2). Resorts World is a luxury Las Vegas hotel and casino. As such, key witnesses for Konami and Resorts World are likely also located in Nevada.

### C.      The District of Nevada Has a Local Interest in Hearing This Dispute.

The parties have little to no material connection to this judicial district. As discussed earlier, Everi Games Holding is the only defendant incorporated under the laws of Texas, but does not conduct business, and does not sell the Accused Product. (Labay Decl., ¶¶4, 8). Everi Games, who is headquartered in this jurisdiction, does not make, use, offer for sale, or sell the Accused

Product and its employees have no specific knowledge regarding the accused functionalities of the Accused Product or relevant documents. (Taylor Decl., ¶¶3-4). Everi Payments is the only defendant entity that sells the Accused Product, and the Accused Product has never been sold in the state of Texas. (Labay Decl., ¶8-9). The Accused Product has, however, been sold in Nevada. (*Id.* at ¶8). As such, this Court should transfer this action to the District of Nevada in the interest of justice.

## ARGUMENT

**A.      The Court Should dismiss or alternatively transfer the action**

**1.      Legal Standards For Dismissal For Lack of Venue Pursuant to Fed. R. Civ. P. 12(b)(3) and Transfer For Lack of Venue Pursuant to 28 U.S.C. § 1406(a)**

Venue in patent cases is governed exclusively by 28 U.S.C. §1400(b), which states that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *Id; see TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1518 (2017). For purposes of this statute, "resides," as applied to a domestic corporation, refers to its place of incorporation. *Id.* at 1517. A defendant has a regular and established place of business under §1400(b) if the following requirements are met: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

The Federal Rules of Civil Procedure provide "an avenue by which a party can seek to dismiss a lawsuit for improper venue." *See* Fed. R. Civ. P. 12(b)(3). The plaintiff bears the burden of establishing proper venue when a defendant challenges venue in a patent case. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). Where venue is improper, the case must be dismissed

or, "if it be in the interest of justice," transferred to a district where the case could have been brought. 28 U.S.C. §1406(a).

> **2.     This Court Should Dismiss or Transfer Because Venue is Not Proper for Each Defendant in this District.**

Plaintiff cannot establish that venue is proper in this district for each defendant. To begin with, Plaintiff incorrectly relies on the general venue statute, 28 U.S.C. §1391(b). (Complaint, ¶ 12). It is well known that venue in patent cases is governed exclusively by 28 U.S.C. §1400(b). Here, only Everi Games Holding is incorporated in Texas and, thus, resides in this district. *TC Heartland*, 137 S. Ct. at 1517. The remaining Everi Entities—Everi Holdings, Everi Payments, and Everi Games—do not reside in Texas. *Id.* Thus, Plaintiff must show that Everi Holdings, Everi Payments, and Everi Games have each committed acts of infringement ***and*** have a regular and established place of business in this district. *Id.* None of the remaining Everi entities have a regular and established place of business and sell the Accused Product in this district. (Labay Decl., ¶¶2-3; 7-9). As such, this Court should dismiss or transfer this action to the District of Nevada, where the defendants do maintain a regular and established place of business. (Labay Decl., ¶¶1-5).[2]

Recognizing that venue is not proper in this judicial district, Plaintiff attempts to impute venue from Everi Games Holding to each defendant under the alter ego theory. (Complaint, ¶¶ 7-9). Plaintiff's alter ego theory, however, fails.

> **3.     The Everi Entities Are Not Alter Egos of Each Other.**

"The presence of a wholly-owned subsidiary is not sufficient to establish venue for the parent corporation, except in the very narrow circumstance where entities 'lack formal corporate separateness, which is a difficult standard to meet and requires proof that the corporations

---

[2] While Everi Games does have a regular presence in this District there should be no dispute that it does not make, use, offer to sell, or sell the Accused Product and, therefore, has not committed acts of infringement. (Labay Decl., ¶8; Taylor Decl., ¶3).

disregard their separateness and act as a single enterprise.'" *Optic153 LLC v. Thorlabs Inc.*, 2020 WL 3403076, at *2 (W.D. Tex. June 19, 2020) (internal citations omitted). In other words, "[s]o long as formal separation of [related corporations] is preserved, the courts ordinarily will not treat the place of business of one corporation as the place of business of the other." *Id.* (internal citation omitted).

Courts in this district have refused to impute venue between corporate entities under the alter ego theory based on similar facts. For example, the plaintiff in *Interactive Toybox, LLC v. Walt Disney Co.*, 2018 WL 5284625, at *1 (W.D. Tex. Oct. 24, 2018) sued a group of related defendants, The Walt Disney Company ("TWDC"), Disney Interactive Studios, Inc. ("DIS"), and Disney Consumer Products and Interactive Media, Inc. ("DCPIM") for patent infringement in this judicial district. *Id.* at *1.

Defendants moved to dismiss the action because venue was improper. *Id.* The Plaintiff, in response argued that several "brick-and-mortar Disney stores in the Austin area constitute physical places of Defendants because they are 'owned and operated' or 'controlled' by Defendants." *Id.* at *3. Although the stores plaintiff identified were operated by non-party Disney Stores USA, LLC ("DSU"), Plaintiff argued that venue was nonetheless proper because TWDC and DCPIM were alter egos of the subsidiary DSU. *Id.* at *4. Plaintiff cited the following evidence in support of its alter ego argument: (i) TWDC's 2016 annual report stating it operates and owns 223 stores in North America; (ii) a TWDC public statement committing to fostering a safe and inclusive workplace in its "Disney-owned stores"; (iii) TWCD appointing the head of its subsidiaries; (iv) DCIPM's statement on Disney's website regarding a Disney store; and (v) TWDC's 2016 annual report stating that TWDC's operations include distribution of products through Disney stores. *Id.* at *4. The Court held "this evidence does not establish that TWDC and DCPIM are ignoring

corporate formalities or that they are exerting such a level of control over Disney Stores USA, LLC that the subsidiary is merely an alter ego for TWDC or DCPIM" and transferred the action. *Id*.

This Court reached a similar conclusion in *Thorlabs*. The Plaintiff in *Thorlabs* sued a defendant, a New Jersey corporation, in the Western District of Texas alleging patent infringement. *Id.* at *1. Defendant moved to dismiss for lack of venue because it did not reside and had no regular and established place of business in the District. *Id.* Plaintiff responded, arguing the Defendant's Austin-based wholly-owned subsidiary constituted a regular and established place of business of Defendant's as alter egos. *Id.* at *2. Plaintiff further argued that Defendant advertised employment opportunities in Austin without differentiating itself from its subsidiary, provided the same phone numbers and email addresses as its subsidiary for sales and technical support, and operated out of the same location as its subsidiary in this District. *Id*. This Court found such evidence insufficient to establish a lack of corporate separateness between Defendant and its subsidiary, "[e]ven if the companies share a unitary business purpose, the standard would not be met." *Id.*

The holdings in *Interactive* and *Thorlabs* are instructive to show that Plaintiff has failed to establish that Everi Entities are alter egos. For example, Plaintiff argues that statements in the 2021 10-Q filing shows that the Defendants disregarded the formal corporate structure and are thus alter egos. (Complaint, ¶7). Specifically, Plaintiff alleges that the Everi Entities refer to themselves as "'Company,' 'we,' 'us,' and 'our' […]", and lists its financial reporting and operations between its games and financial transactions business segments. (Complaint, ¶7). The Court in *Interactive* found Defendants' statement in its annual report that its operations included distribution of products through the subsidiary-owned stores was not sufficient to establish an alter ego relationship between the defendant and its subsidiary. *Interactive*, 2018 WL 5284625 at *4. As

11

such, Everi's 2021 10-Q statement regarding its operations and financial reporting across its games and financial transactions business segments does not establish an alter ego relationship. *Id.* Plaintiff's allegation that Everi Games Holding and Everi Games maintain the same Austin, Texas address. (Complaint, ¶12) was also rejected as insufficient to establish an alter ego relationship in *Thorlabs*. *See* WL 3403076, at *3.

Finally, Plaintiff's allegations concerning Everi Holdings' September 29, 2021 press conference (Complaint, ¶8) are also insufficient to establish an alter ego relationship. *See Bd. of Regents v. Medtronic PLC*, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018) (finding "press releases announcing the business to be conducted in the district by Medtronic MiniMed, Inc., and its subsidiary MiniMed Distribution Corp., which are separate and distinct corporate entities, are insufficient to establish that venue in this district is proper for the Board's claims alleged against Medtronic, Inc. in this action.").

As such, the Everi Entities are not alter egos of each other and venue, therefore, may not be imputed. This Court should, therefore, dismiss this action for the non-resident Everi Entities or alternatively transfer the entire action to the District of Nevada.

> **4.     This Court Should Dismiss Defendants Everi Games and Everi Games Holding For Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6).**

A complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) when it fails to include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "mere possibility of misconduct" is not enough. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, the Fifth Circuit has repeatedly stated courts need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions in reviewing a motion to dismiss under Rule 12(b)(6). *See, e.g., Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006)(conclusory allegations will not suffice to prevent motion to dismiss).

Under 35 U.S.C. § 271, "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  Here, there is no well-pled factual allegation that either Everi Games or Everi Games Holding has made, used, offered for sale, or sold the Accused Product. (*See generally* Complaint.) Instead, Plaintiff argues that they are an "alter ego" of at least Everi Payments, the party who actually makes, uses, offers to sell, or sells the Accused Product. (Complaint, ¶9). However, as discussed above, even taking the factual alter ego allegations as true, they are insufficient to import liability on either Everi Games or Everi Games Holding. Thus, the Court should dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6).

### B.    The Court Should Transfer Pursuant to 28 U.S.C. § 1404(a)

#### 1.    Legal Standard For Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)

Alternatively, this Court should transfer this action pursuant to 28 U.S.C. §1404(a) because the District of Nevada is the clearly more convenient forum. Motions to transfer under 28 U.S.C. §1404(a) in patent cases are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. §1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.*

If the destination venue would have been a proper venue (which Everi contends it is), then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of

witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)("*Volkswagen I*") (*citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

The weight the Court gives to each convenience factor will vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013). The burden to prove that a case should be transferred for convenience falls on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The movant must show that the alternative venue is clearly more convenient. *In re Volkswagen, Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) ("*Volkswagen II*").

### 2.     Venue is Proper in the District of Nevada.

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *Volkswagen II.*, 545 F.3d at 312. This action might have been properly brought in the District of Nevada because the defendants maintain a regular and establish place of business in the District of Nevada. (Labay Decl.). *See* 28 U.S.C. §1400(b); *TC Heartland*, 137 S. Ct. at 1517.

      3.        **The Private Interest Factors Favor Transfer.**

      a)        **The Relative Ease of Access to Sources of Proof Favor Transfer.**

Courts look to where evidence, "such as documents and physical evidence," is stored in considering this first private interest factor. *Fintiv, Inc. v. Apple Inc.*, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019). This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020). Moreover, "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340.

Here, the bulk of relevant evidence, both documentary and physical, is likely located in the District of Nevada. Both the Plaintiff and the relevant Everi Entities are located in Las Vegas, Nevada. This Court has explained that the location of the parties' headquarters could indicate where relevant witnesses are located. *Moskowitz Family, LLC v. Globus Medical, Inc.*, 2020 WL 4577710, at *4 (W.D. Tex. July 2, 2020). Plaintiff's principal place of business is located in Nevada. (Complaint, ¶ 1), and Plaintiff's recent partnerships with third-parties Konami and Resorts World likely places Plaintiff's key documentary and physical evidence, as well as material party witnesses, in Nevada. (Ex. 2 & 3). Moreover, the Everi Entities are likely to have the bulk of relevant documents in this case as the alleged infringers. *See Fintiv*, 2019 WL 4743678, at *3. Indeed, Everi's source code, financial information, and customer information are all located in Nevada. (Labay Decl., ¶10; Newsom Decl., ¶5). The actual Accused Product is made available in Nevada, and marketing documents are stored on Everi's internal server located in Nevada. (Labay Decl., ¶8; Simmons Decl., ¶5). As such, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Fintiv*, 2019 WL 4743678 (*quoting In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). This factor, therefore, weighs in favor of transfer.

> **b)** **The Availability of Compulsory Process to Secure the Attendance of Witnesses Favors Transfer.**

Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at *5. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014). Moreover, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re Dish Network L.L.C.*, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021).

Here, there are several potential key third party witnesses in this case. Sanford—the Asserted Patent's lead inventor—was CEO of Everi Holding's predecessor company Global Holdings, then left and founded Sightline Payments, LLC. (Labay Decl., ¶¶12-13). Sanford served as Plaintiff's CEO, but recently retired and is believed to reside in Nevada. (*Id.* at ¶¶11-12). As the lead inventor of the Asserted Patents, he is likely to have key testimony regarding the claims in this case. (*Id.* at ¶12; *see also* Complaint Exhibits A-E). In addition to Sanford, it is likely that employees and/or agents of Plaintiff's partners Konami and Resorts World will also be key third party witnesses. Since Konami and Resorts World are both based in Nevada, key witnesses are also likely located in Nevada. (Ex. 2; Ex. 3). Additionally, LeStrange is a third party consultant that has a working relationship with Everi going back to 2000 when Mr. Sanford was employed by Everi. (LeStrange Decl., ¶3). It is expected that LeStrange, a Nevada resident, will have relevant testimony on the development of the Accused Product, and potentially prior art, and has no desire to travel to Texas. (LaStrange Decl.). As LeStrange resides in Nevada, his attendance in this venue cannot be compelled.

In contrast, there are no third party witnesses believed to be located in this judicial district. As there is at least one unwilling third party witness in this case—LeStrange—this factor weighs in favor of transfer. *In re Hulu, LLC*, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021).

### c)   The Cost of Attendance for Willing Witnesses Favors Transfer.

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv,* 2019 WL 4743678, at *6 (W.D. Tex. Sept. 13, 2019)(citing *In re Genentech,* 566 F.3d at 1342). Courts should consider every potentially relevant and material witness. *Id.* Under the 100 mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id.*

The Everi Entities that conduct business have regular and established places of business located in Nevada. (Labay Decl., ¶¶3;5). Moreover, Plaintiff's principal place of business is located in Nevada. (Complaint, ¶ 1). As such, relevant and material party witnesses are located in Nevada for both Plaintiff and the Everi Entities. Everi is also not aware of any Plaintiff witness who resides in this district. (Labay Decl., ¶14).

For the employees residing in Nevada, "it is more convenient for [them] to testify at home […] '[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *See Volkswagen II*, 545 F.3d at 317 (*quoting Volkswagen I*, 371 F.3d at 205). "[T]he task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *Wet Sounds, Inc. v. Audio Formz, LLC*, 2017 WL 4547916, at *3 (W.D. Tex. Oct. 11, 2017).

The substantial inconveniences to the key party witnesses compels a change in venue with greater force here. The current and proposed venues are more than 100 miles apart, so the Fifth Circuit's "100-mile rule" applies, and "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317. Here, transfer to Nevada is appropriate because "keeping the Fifth Circuit's 100-mile rule in mind, [Everi] has shown that far more witnesses in this case, both party and nonparty, are in the [destination venue] or close to it," "even without regard to the difficulties posed by the pandemic." *Uniloc 2017 LLC v. Google LLC*, 2020 WL 3064460, at *6 (E.D. Tex. June 8, 2020).

Transferring this action to the District of Nevada would significantly reduce time to travel, time spent away from work, and time spent away from the community for these witnesses. Thus, the most important factor strongly favors transfer.

### d)      The "Practical Problems" Factor Favors Transfer or is Neutral.

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"[T]he existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). Here, there is no co-pending related or duplicative litigation in this district or the District of Nevada. However, this case is still in its early stages and transfer would not cause delays. Thus, "any increase in judicial economy from the Court's experience in these early stages of litigation is likely to be

limited." *Parus Holdings Inc. v. LG Elecs. Inc.*, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020). Therefore, this factor favors transfer or is neutral.

### 4.     The Public Interest Factors Overall Favor Transfer.

#### a)     The Administrative Difficulties Flowing from Court Congestion is Neutral or, At Best, Slightly Disfavors Transfer.

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *Id.* at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

According to the most recent June 30, 2021 Caseload Statistics provided by the United States Courts, the Western District of Texas has shorter median time to trial than the District of Nevada. (*See* Caseload Statistics, attached as **Exhibit 4**). However, the length to trial is speculative because this case just started, and the Court has not set an initial case schedule yet. That uncertainty is exacerbated by the unpredictable progression of the COVID-19 pandemic. Hence, this factor is neutral or, at best, slightly disfavors transfer.

#### b)     The Local Interest in Having Localized Interests Decided at Home Favors Transfer.

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections

between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344

(quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original).

This factor strongly favors transfer because the District of Nevada has a much stronger local interest in this case than this judicial district. Plaintiff is headquartered in Nevada (Complaint, ¶1), and the Everi Entities either hold annual meetings in Nevada, or maintain regular and established places of business in Nevada. (Labay Decl., ¶¶2-5). Everi Payments is the only defendant entity that sells the Accused Product, and none of these sales are in the state of Texas. (*Id*. at ¶8). In fact, the Accused Product has never been sold, deployed, or operated anywhere in the state of Texas by any of the Everi Entities. (*Id.* at ¶9). Thus, this factor favors transfer.

<b>c)      The Remaining Public Interest Factors Are Neutral.</b>

The remaining two public interest factors are neutral. Both this Court and the District of Nevada are familiar with patent law and, in fact, have extensive experience adjudicating complex patent disputes, and Everi is not aware of any conflict of law issues presented by this case.

<b><u>CONCLUSION</u></b>

WHEREFORE, the Everi entities respectfully requests that this Court transfer this case to the U.S. District Court for the District of Nevada.

Respectfully Submitted,

DICKINSON WRIGHT PLLC

By: */s/ John S. Artz*
John S. Artz  (Bar No. 43739)
350 S. Main Street, Suite 300
Ann Arbor, MI 48104
Telephone:(248) 433-7262
Facsimile: (844) 670-6009
Email:      JSArtz@dickinsonwright.com

Christopher E. Hanba (TX Bar No. 24121391)
607 W. 3rd Street, Suite 2500
Austin, TX 78701

20

Telephone:(512) 582-6889
Facsimile: (844) 670-6009
Email:      chanba@dickinsonwright.com

*Counsel for Defendants EVERI HOLDINGS INC., EVERI PAYMENTS INC., EVERI GAMES HOLDING INC., and EVERI GAMES INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2021, a true and correct copy of the foregoing has been served on all counsel of record via the Court's CM/ECF system.

*/s/ John S. Artz*
John S. Artz

21