IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SIGHTLINE PAYMENTS, LLC,**<br>**Plaintiff,**<br><br>*v.*<br><br>**EVERI HOLDINGS INC.,**<br>**EVERI PAYMENTS INC.,**<br>**EVERI GAMES HOLDING INC., and**<br>**EVERI GAMES INC.**<br>**Defendants.** | 6:21-CV-01015-ADA |

## MEMORANDUM OPINION AND ORDER

Came on for consideration this date is Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6), or, Alternatively, Transfer for Lack of Venue Pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a), filed November 24, 2021. ECF No. 21 (the "Motion"). Plaintiff Sightline Payments, LLC a response on March 31, 2022, ECF No. 33, to which Defendants Everi Holdings Inc. ("Everi Holdings"), Everi Payments Inc. ("Everi Payments"), Everi Games Holding Inc. ("Everi Games Holding"), and Everi Games Inc. ("Everi Games") (collectively, "Defendants") filed a reply on April 15, 2022, ECF No. 42. The Court heard oral arguments on this Motion on May 25, 2022. *See* ECF No. 57. After careful consideration of the Motion, the parties' briefs, oral arguments, and the applicable law, the Court **GRANTS** Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) as to Everi Holdings, Everi Payments, and Everi Games. It further **GRANTS** Defendants Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) as to the claims against Everi Games Holding. And, finally, it **DENIES-AS-MOOT** Defendants' alternative motions.

1

## I. BACKGROUND

Sightline accuses Defendants, which it refers to collectively as Everi, of commercializing a product, the CashClub Wallet (the "Accused Product(s)"), that allegedly infringes several of Plaintiff's patents "that allow for cashless transactions used in casino gaming offerings and non-gaming spend." ECF No. 1 (the "Complaint") ¶ 19. Sightline purports to own U.S. Patent Nos. 8,708,809 (the "'809 Patent"), 8,998,708 (the "'708 Patent"), 9,196,123 (the "'123 Patent"), 9,466,176 (the "'176 Patent"), and 9,785,926 (the "'926 Patent") (collectively, the "Asserted Patents"). ECF No. 1 ¶¶ 13–17). According to Sightline, Defendants directly infringe the Asserted Patents by "making, using, selling, and offering to sell . . . mobile software products known as CashClub Wallet." ECF No. 1 ¶ 51 (emphasis removed).

Defendants filed its Motion on November 24, 2021, challenging venue and the sufficiency of the Complaint, primarily based on Defendants' structure. That Motion is supported by an affidavit from Mark F. Labay, CFO of each of the Defendants. *See* ECF No. 21-1. In their own estimation, Defendants constitute four separate business entities:

- Everi Holdings is a holding company incorporated under the laws of Delaware. ECF No. 21 at 3. Everi Holding does not conduct any business. *Id.*

- Everi Payments is a Delaware corporation registered to do business in Austin, Texas. *Id.* According to Defendants, Everi Payments is "the only entity that sells the Accused Products, and none of those sales have been directed to or otherwise reached the state of Texas." *Id.* Everi Holdings owns 100% of Everi Payments. *See* ECF No. 33 at 11.

- Everi Games Holding is a holding company incorporated under the laws of Texas. ECF No. 21 at 3. It is registered to do business in Texas and its registered office address is

2

in this District. *See id.* Everi Holdings owns 100% of Everi Games Holding. *See* ECF No. 33 at 11.

- Everi Games is a Delaware corporation registered to do business in Austin, Texas. ECF No. 21 at 3. Everi Games Holding owns 100% of Everi Games. *See* ECF No. 33 at 11. Everi Games leases physical offices in Austin. *Id.* at 7.

Defendants' Motion is now ripe and the Court will consider its grounds for relief in turn.

## II. LEGAL STANDARD

### A. Dismissal for Improper Venue

Section 1400(b) of title 28 of the United States Code "constitute[s] the exclusive provision controlling venue in patent infringement proceedings." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1518 (2017) (internal quotation marks omitted). A claim for patent infringement must be brought "in the judicial district where the defendant resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *see also Optic153 LLC v. Thorlabs Inc.*, No. 6:19-CV-00667-ADA, 2020 WL 3403076, at *2 (W.D. Tex. June 19, 2020). Section 1400(b) is intentionally restrictive, and it is the plaintiff's burden to establish proper venue. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013–14 (Fed. Cir. 2018).

Under the first prong, the Supreme Court has held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland*, 137 S. Ct. at 1517. Under the second prong, the Federal Circuit interpreted a "regular and established place of business" to impose three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.,* 871 F.3d 1355, 1360 (Fed. Cir. 2017). Regarding the first requirement, a "place" refers to a "'building or a part of a building set apart for any purpose' or

3

'quarters of any kind' from which business is conducted." *Id.* at 1362 (citations omitted). Regarding the second requirement, "regular" means that the business must operate in a "'steady, uniform, orderly, and methodical' manner," and "sporadic activity cannot create venue." *Id.* (citations omitted). And the third requirement means that the place cannot be solely a place of the defendant's employee—"the defendant must establish or ratify the place of business." *Id.* at 1363. Failure to satisfy any statutory requirement requires a finding of improper venue. *Id.*

### B. Dismissal for Failure to Sufficiently Plead a Claim for Relief

In patent cases, issues that are unique to patent law are governed by Federal Circuit law. *See Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012). But because motions to dismiss under Rule 12(b)(6) raise purely procedural issues, in patent cases, courts apply the law of the regional circuit—in this case, the Fifth Circuit—when deciding whether such a motion should be granted. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).

Rule 12(b)(6) requires that a complaint contain sufficient factual matter, if accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this factual plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported mere conclusory statements, do not suffice." *Id*. In resolving a motion to dismiss for failure to state a claim, the question is "not whether [the plaintiff] will ultimately prevail, . . . but whether [the] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's

4

likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).

### III. ANALYSIS

**A.     This District Is Not a Proper Venue for Everi Holdings, Everi Games, or Everi Payments**

Defendants move to dismiss this Action for lack of venue pursuant to Rule 12(b)(3). The Court cannot dismiss this entire Action because there is no dispute that venue is proper as to Everi Games Holding, which is incorporated in Texas and has its registered office in Austin. *See* ECF No. 21 at 9. As to the other Defendants, the Motion argues that: Everi Holdings and Everi Payments have no regular and established place of business in this District; and none of Everi Holdings, Everi Payments, and Everi Games Holding have committed acts of infringement in this District. *See id.*

Sightline's argument for venue as to the other Defendants is seemingly broken into roughly two parts. First, Everi Payments has a regular and established place of business in this District in the form of Everi Games's Austin offices. Second, each Defendant's conduct can be imputed to the others through an alter ego theory. Falling under this second part is Sightline's contention that it has sufficiently alleged that each of the Defendants has committed an act of infringement in this District, in satisfaction of § 1400(b). Sightline's opposition suggests (and Sightline made clear during oral arguments) that Everi Holdings, Everi Games Holding, and Everi Games committed acts of infringement only if the Court imputes Everi Payments's actions to Everi Holdings, Everi Games Holding, and Everi Games under Plaintiff's alter ego theory.

  1. <u>Everi Payments Does Not Operate a Regular and Established Place of Business in this District</u>

Sightline leads off by correctly reciting the three aspects of § 1400(b)'s requirement for "a regular and established place of business" in this District. ECF No. 33 at 6. It must be (1) "a

5

physical place in the district"; (2) "regular and established"; and (3) "the place of the defendant." *In re Cray*, 871 F.3d at 1362.

Sightline immediately strays from *Cray*, proposing that venue may be proper "with regard to one corporation by virtue of the acts of another, intimately connected corporation" without resorting to considerations of alter ego. ECF No. 33 at 6. Ironically, the portion of *3M v. Eco Chem* that Sightline quotes for this proposition discusses a Seventh Circuit case affirming a lower court's disregard of the corporate form *under an alter ego theory*. 757 F.2d 1256, 1265 (Fed. Cir. 1985) (citing *Leach Co. v. Gen. Sani-Can Mfg. Co.*, 393 F.2d 183 (7th Cir. 1968)). Sightline does not identify the circumstances, short of an alter ego scenario, that justify imputing the acts of one corporation to another. But the Federal Circuit has stated that such circumstances must be "specific" and "unusual." *Manville Sales Corp. v. Paramount Sys.*, 917 F.2d 544, 552 (Fed. Cir. 1990) (quoting *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967)). This Court cannot discern circumstances justifying ignoring the Defendants' corporate forms, hampered by the lack of clarity in the opposition. *See also infra* Section III.A.3 & n.5.

After that brief diversion, Sightline seemingly returns to the confines of *Cray* to argue that Everi Games's Austin offices constitute a regular and established place of business for Everi Payments. ECF No. 33 at 7. Plaintiff satisfies *Cray*'s first element in identifying a physical place in this District: Everi Games's Austin offices. It is undisputed that Everi Games maintains a regular and established place of business at its leased Austin offices. *See* ECF No. 21 at 3; ECF No. 42 at 2. But Plaintiff's arguments with respect to the final two *Cray* elements lack persuasive force. These two elements require "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google*

6

*LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). Sightline's attempt to satisfy these requirements start with tying Everi Payments employees to Everi Games's Austin offices. These attempts fail.

There is little dispute that Everi Payments has around thirty employees in Texas and is hiring for more. ECF No. 33 at 7. Sightline seems to suggest that this means that Everi Payments places current employees and intends to place new hires in Everi Games's Austin offices. *Id.* There is one obvious alternative explanation: Texas-based Everi Payments personnel work from home. All Defendants concede is that Everi Payments personnel are permitted to visit the Austin office if they "need" to do so. ECF No. 42 at 2. To be sure, this is evidence that Everi Payments ratified the Austin office as its place of business.[1] *Cf. In re Cray*, 871 F.3d at 1363 (holding that "the defendant must establish or ratify the place of business" under the third *Cray* elements). But Sightline submits no evidence that any Everi Payments personnel have ever visited the Austin office and, if they have, the frequency of their visits. Defendants, therefore, have not shown "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google*, 949 F.3d at 1345.[2] As such, the Court declines to deem Everi Games's Austin offices a regular and established place of business for Everi Payments.

---

[1] Plaintiff submits other evidence in support of its contention that Everi Payments ratified Everi Games's Austin offices. For example, Plaintiff cites to tax and trademark filings and shared marketing. ECF No. 33 at 7–8. The Court need not consider this evidence because Plaintiff has not shown that the regular, physical presence of an Everi Payments employee or agent in the Austin offices.

[2] The Court cannot identify in Plaintiff's opposition any suggestion of an agency theory, let alone one that would satisfy this requirement.

### 2. Plaintiff Has Failed to Establish an Adequate Alter Ego Theory

Next, Sightline argues that the Everi Games, Everi Payments, and Everi Games Holding (the "subsidiary-Defendants") are merely alter egos of Everi Holdings. Under this theory, Sightline apparently posits that the contacts of each subsidiary-Defendant can be imputed to Everi Holdings and to every other subsidiary-Defendant—without restriction. *See* ECF No. 33 at 10–11.

To succeed on this theory, Sightline must show that the lines between Defendants have become so blurred that the four become one. *See Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 595 (E.D. Tex. 2019). "Because the alter ego issue is not unique to patent law, . . . court[s] appl[y] the law of the regional circuit." *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1380 (Fed. Cir. 2004). "Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent." *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 331 (5th Cir. 2011). But the standard for establishing that entities are alter egos is "relaxed where the alter ego theory is used not to impose liability, but merely to establish jurisdiction." *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 681 (S.D.N.Y. 2016). Although courts often discuss alter ego in terms of jurisdictional issues, the same concerns are present when analyzing venue. *See 3M*, 757 F.2d 1256, 1265 (Fed. Cir. 1985); *Nat'l Steel Car Ltd. v. Greenbrier Companies Inc.*, No. 6:19-cv-00721-ADA, 2020 WL 4289388, at *2 (W.D. Tex. July 27, 2020). Additionally, activities consistent with the parent's and subsidiary's relationship should not give rise to a finding of an alter ego. *See United States v. Bestfoods*, 524 U.S. 51, 72, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998).

Yet "[t]he presumption of institutional independence of related corporate entities may be rebutted by 'clear evidence.'" *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346

8

(5th Cir. 2004). A non-exhaustive list of factors courts may consider in analyzing alter ego include whether:

> (1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and other expenses of subsidiary; (9) the subsidiary receives no business except that given by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; (12) the subsidiary does not observe corporate formalities.

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 418 (5th Cir. 2006). Ultimately, "there is no litmus test for determining whether a subsidiary is the alter ego of its parent." *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 694 (5th Cir. 1985). Moreover, "[r]esolution of the alter ego issue is heavily fact-specific and, as such, is peculiarly within the province of the trial court." *Id.*

Sightline has adduced evidence under the first four *Bridas* factors suggesting that the subsidiary-Defendants are Everi Holding's alter ego. Factors five, seven, eleven, and twelve each blow the other direction. Sightline has failed to show that any of the other, weighty factors militate in its favor. On the balance, Plaintiff has not shown that disregarding Defendants' corporate forms is justified.

*Factors 1 and 2*. As to the first two *Bridas* factors, it is undisputed that Everi Holdings owns the subsidiary-Defendants (or that Everi Holdings owns Everi Games Holding, which in turn owns Everi Games) and many of its officers and directors act as the subsidiary-Defendants only officers and directors. *See* ECF No. 33 at 11.[3] Yet the Fifth Circuit has repeatedly stated that "one-

---

[3] Randy L. Taylor is President and COO for each of the Defendants. *See* ECF No. 35-12. Mark F. Labay is Executive VP, CFO, and treasurer for each of the Defendants. *Id.* Mr. Taylor and Mr.

9

hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999).

*Factors 3 and 4*. As to the third and fourth factors, Mr. Labay describes services shared among the Defendants, like the executive team and marketing services. ECF No. 35-1 at 119:17–120:8. While finance and accounting have shared aspects, Mr. Labay testified that those services are segmented between a "games unit" and a "fintech unit." *Id.*; *see also* ECF No. 42 at 5. (As Mr. Labay explains elsewhere, Everi Games conducts a gaming business while Everi Payments is involved with Fintech. ECF No. 35-1 at 102:2–9, 276:12–15.) The Defendants' employee benefit plans have merged; there is one unified corporate auditor, one unified corporate handbook, and one consolidated financial statement. *See* ECF No. 33 at 3–4.

Sightline also remarks that the "Everi" brand collectively refers to Everi Holdings and all its subsidiaries. *See id.* at 4. Defendants use unified social media accounts and a single, unified website, and all Defendants' employees use that same domain name in their email addresses.[4] *See id.* The Court finds this evidence relevant to the alter-ego analysis, but it is far from dispositive. *See In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 U.S. Dist. LEXIS 124918, at *13

---

Labay are also directors for each Defendants and the only two directors for the subsidiary-Defendants. *Id.* Kate C. Lowenhar-Fisher is Executive VP, CLO, General Counsel, and corporate secretary for each of the Defendants. *Id.* And Michael D. Rumbolz is CEO of each of the Defendants. *Id.* Mr. Taylor, Mr. Labay, Ms. Lowenhar-Fisher, and Mr. Rumbolz are the only officers for the Defendants. *Id.* Mr. Rumbolz is also Chairman of the Board and a director for Everi Holdings, which has six directors who are not directors or offices for the subsidiary-Defendants. *Id.*

[4] Though Defendants assert that Everi Payments is the only Defendant doing business related to the Accused Product, the CashClub Wallet, Everi Games is the entity that owns trademarks to "CashClub" and "CashClub Wallet." *See* ECF No. 33 at 5. While this may be evidence of some blurring between the subsidiaries, it does little to blur the lines separating Everi Holdings from its subsidiaries.

10

(E.D. Tex. July 6, 2021) (refusing to find alter ego involving Toyota subsidiaries even though group of companies all presented themselves as "Toyota"); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 168 F. Supp. 3d 918, 937 (E.D. La. 2016) (the sharing of a common logo and part of a common name does not evince alter ego status).

*Factor 5*. As to the fifth *Bridas* factor, Mr. Labay testified that "depending on what the[] capital requirements might be [of the subsidiaries], they may need borrowing or funding to fund their business." ECF No. 35-1 at 165:10–16. He conceded that Everi Holdings has lent money to its subsidiaries. ECF No. 33 at 13. For example, Sightline asserts that when Everi Holdings acquired Everi Games (more specifically, when their predecessors-in-interest did so) in 2014, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.*. Plaintiff also avers, based on Mr. Labay's deposition testimony, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* at 13–14.

According to Sightline, "It cannot be credibly argued that a standard practice of truly separate entities is to simply cancel ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." *Id.* at 14. The Court does not agree. Evidence shows that Everi Games's acquisition-related, interest-bearing debt was documented with a promissory note. *See* ECF No. 35-15. Sightline has not shown that the interest rate reflects a sweetheart deal or was other arrived at through anything less than an arms-length negotiation. Moreover, there is no indication that Everi Holdings or Everi Games Holding ignored the corporate form by, for example, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. To the contrary, Mr. Labay testified that ▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 257:15–20. The loan upon which Sightline focuses was interest-bearing and Everi Holdings apparently "maintained the corporate formalities by properly documenting its loans and capital contributions to its subsidiaries." *Doe v. Unocal Corp.*, 248 F.3d 915, 927–28 (9th Cir.

11

2001); *Knieper v. Forest Grp. USA, Inc.*, No. 4:15-CV-0222-HLM, 2016 U.S. Dist. LEXIS 193961, at *38 (N.D. Ga. Mar. 3, 2016). The Court is, therefore, not persuaded that this loan and subsequent cancellation blurs the lines between Defendants. Nor is the Court persuaded, without more, that Everi Games is so financially dependent on Everi Holdings or Everi Games Holding that it could not have functioned without the capital contribution arising from the debt cancellation. *See, e.g.*, *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 157 (S.D.N.Y. 2004) (holding that financial dependence requires "that the subsidiary would not be able to function without the financial support of the parent").

*Factor 7*. Sightline tries to spin the above-referenced intercompany lending as evidence that the debtor is "grossly undercapitalized." Yet the cancellation of Everi Games's debt would only improve its capitalization. Sightline has failed to uncover any evidence speaking directly to the capitalization of the subsidiary-Defendants. *Gardemal*, 186 F.3d at 594 (holding that "equity does not demand that we merge and disregard the corporate identities of" a parent and a subsidiary where there was no evidence that the plaintiff could not recover damages from the subsidiary). And the absence of "evidence that the subsidiary would be unable to pay a judgment, . . . weighs heavily against a finding of alter ego status." *Nat'l Steel Car*, 2020 WL 4289388, at *4 (internal citations omitted).

*Factors 11 and 12*. There seems to be little dispute that the "the day-to-day operations of the Everi Entities" and "the product and service offerings" are distinct. ECF No. 42 at 2. Or at the very least, Plaintiff has been unable to provide actual evidence of overlap in daily operations. As Mr. Labay testified, Everi Payments's business is directed to payment processing and financial services while Everi Games's business is directed to gaming. ECF No. 35-1 at 102:2–9, 276:12–15. And customers enter agreements with Everi Payments Inc., Everi Games Inc., or both

12

depending on the service the customer is contracting for. *See* ECF No. 35-1 at 128:1–8. Sightline has failed to adduce evidence regarding the daily operations of the other Defendants.

Relatedly, Plaintiff has not shown that Defendants ignore corporate formalities. Plaintiff concedes that "some Defendants appear to hold separate bank accounts." ECF No. 33 at 14. Plaintiff further admits that "Everi Holdings, as a publicly traded company, appears to observe corporate formalities with respect to SEC regulations." *Id.* Yet Plaintiff complains that Defendants failed to produce discovery sufficient for Plaintiff to disprove the observance of "internal corporate formalities." *Id.* The time to raise these issues was during the venue-discovery period; Plaintiff cannot now wield any of Defendants' alleged failings as a sword with which to draw an adverse inference. The twelfth *Bridas* factor, therefore, counsels against finding alter ego.

*Conclusion.* The Defendants apparently maintain separate headquarters, observe corporate formalities, and exercise authority over their own operations. The control Everi Holdings exercises over its subsidiaries—based on the slim record before this Court—is consistent with that expected of a holding company managing a portfolio of subsidiaries. *See Logan Farms, Inc. v. Smithfield Foods, Inc.*, No. H-05-0766, 2006 U.S. Dist. LEXIS 14659, at *6–7 (S.D. Tex. Mar. 9, 2006). Like the alter ego theory in *Gardemal*, Sightline's theory fails here even though Everi Holdings owns its subsidiary's stock, shares officers with the subsidiary-Defendants, uses a unified operations manual, and shares marketing services. 186 F.3d 588 (5th Cir. 1999); *see also Brooks & Baker, L.L.C. v. Flambeau, Inc.*, No. 2:10-cv-146-TJW-CE, 2011 U.S. Dist. LEXIS 112568, at *14 (E.D. Tex. Sep. 30, 2011) (refusing to find alter ego because there was no "actual evidence that [the parent] exercises any control over [the subsidiary's] general policy or its daily operation" and the parent and subsidiary maintained "separate headquarters and separate accounting systems,"

13

"observe[d] corporate formalities, compile[d] separate financial statements, and conduct[ed] separate board meetings").

Sightline reliance on *STC.UNM* is unavailing at least because this Court refused to endorse an alter ego theory given an uncontroverted affidavit from the defendants that the parent did not control the day-to-day operations of the subsidiary. *STC.UNM v. TP-Link Techs. Co.*, No. W-19-CV-00262-ADA, 2020 WL 10758856, at *4 (W.D. Tex. Jan. 2, 2020).

### 3. Plaintiff Fails to Plead Acts of Infringement in this District

As explained above, this Court is not a proper venue for Everi Payments and Everi Holdings because they have no regular and established place of business in this District. As to Everi Games, because it maintains a regular and established place of business in Austin, venue lays in this Court so long as Sightline can show that Everi Games has committed an act of infringement in this District. Typically, the Court will accept as true a complaint's well-pleaded factual allegations regarding a defendant's acts of infringement in this District. *See EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-CV-1001-ADA, 2022 WL 1241967, at *7–8 (W.D. Tex. Apr. 26, 2022). Here, the Court cannot accept the Complaint's allegations that all the Defendants have committed acts of infringement in this District because they are not well-pleaded.

The Complaint alleges that "Everi transacted business and committed infringing acts within and directed to the State of Texas including this specific judicial district." ECF No. 1 ¶ 11. It also alleges that "Everi committed acts of infringement in the Western District of Texas." *Id.* ¶ 12. These are more akin to a rote reproduction of a subpart of § 1400(b). These are the only allegations specific to Defendants' acts of infringement in this District. The Complaint does not allege what acts of infringement Defendants committed in this District—like making, using, or selling. Nor does the Complaint identify, with any specificity, which of the four Defendants committed, for example, claimed method steps in this District.

14

Sightline nevertheless contends that the Complaint has sufficiently alleged that Defendants have performed one step of each of the asserted method claims in this District. *See* ECF No. 33 at 8 ("That one step is performed in this District is sufficient to show an act of infringement in the forum."). Sightline then cites paragraphs from the Complaint that, in Sightline's words, "concern[] creation of a user account with user credentials that can occur in the District." ECF No. 33 at 8. These paragraphs allege that the Accused Product could perform the relevant step; they do not allege that Sightline has actually performed the relevant steps, let alone actually performed them in this District. Sightline cites *Seven Networks, LLC v. Google LLC* favorably but the complaint there "explicitly alleged that at least one step of each of the claims is performed in this District." 315 F. Supp. 3d 933, 944 & n.15 (E.D. Tex. 2018). That is not the case here.

Defendants have also argued that "there is no well-pled factual allegation that either Everi Games or Everi Games Holding has made, used, offered for sale, or sold the Accused Product," whether it be within or without this District. ECF No. 21 at 13. In response, Plaintiff suggests that alter ego is sufficient to import liability to Everi Games and Everi Games Holding, later remarking:

> The Complaint is well-pled as to a "single indivisible injury" caused "as part of a common business enterprise" whereby each Defendant acted "in concert" and with the "knowledge, ratification, and/or express or inherent authorization" of the others.

ECF No. 33 at 1 n.1 (citing ECF No. 1 ¶ 9); *see also* ECF No. 33 at 9 (same). Sightline apparently posits that its allegations directed to Everi Games and Everi Games Holding's infringement (within or without this District) are well-pleaded when viewed through an alter-ego lens. And, in Plaintiff's view, paragraph 9 of the Complaint constitutes allegations directed to the existence of an alter ego relationship. Plaintiff made this reasoning explicit during oral argument.

To sufficiently plead such an alter ego relationship, Plaintiff must plead facts that, "when taken together, would render it plausible that alter ego or agency status is applicable here." *Midwest*

15

*Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-1334-RGA-CJB, 2021 U.S. Dist. LEXIS 95947, at *16 (D. Del. May 20, 2021). The facts pleaded must go to those factors, like the *Bridas* factors, suggestive of the existence of alter ego status. *See id.* The Complaint omits any such allegations. And moreover, the Court has rejected this alter ego theory, even when Plaintiff was armed with facts outside the pleadings. *See supra* Section III.A.2. Just as the Court refuses to adopt an alter ego theory to impute one Defendant's regular and established place of business to another, it also refuses to do so to impute one Defendant's acts of infringement to another.[5]

This Court will not, therefore, accept as true Plaintiff's threadbare allegations that any Defendant, including Everi Games, committed an act of infringement in this District.[6] Absent those allegations, Plaintiff has failed to make a *prima facie* case that these three Defendants committed the required acts in this District. As such, this Court is not a proper venue for Everi Games, Everi Payments, or Everi Holdings.[7]

---

[5] To the extent Plaintiff purports to put forward some other theory permitting it to impute one of the Defendant's activities in this District to another Defendant, Plaintiff has not adequately articulated such a theory. The Federal Circuit recently considered a district court's decision to, in the § 1400(b) context, impute acts of infringement from one defendant to another where the two had entered into an agreement to commercialize the accused product; the district court characterized the relationship as a "partnership." *See BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, 28 F.4th 1247, 1264 (Fed. Cir. 2022). The Court finds no similar arrangement here.

[6] Mr. Labay's testimony that "Everi Payments is the only entity that sells the" Accused Product and "Everi Game Holding does not conduct business" further supports this holding. ECF No. 21-1 ¶¶ 2, 4.

[7] The Complaint alleges that venue is proper "in this Court pursuant to 28 U.S.C. § 1391(b)." ECF No. 1 ¶ 12. Defendants note, and the Plaintiff recognized during oral argument, that the Complaint should have referred to § 1400(b), which governs patent actions, like this one. *See* ECF No. 21 at 1. Though Plaintiff mistakenly referred to the wrong venue statute, the few sentences following the error contained allegations clearly directed to § 1400(b). This error is, however, another strike against its venue allegations.

B.     **Failure to State a Claim**

As explained immediately above, the Complaint does not plead facts to establish that Everi Games Holding "itself engaged in infringing acts." *Yip v. Hugs to Go LLC*, 377 F. App'x 973, 978 (Fed. Cir. 2010). Plaintiff primarily only alleges that the CashClub Wallet infringes; because the Complaint does not connect Everi Games Holding to the CashClub Wallet, it does not allege how Everi Games Holding commits infringement. *See Driessen v. Sony Music Ent.*, No. 2:09-CV-0140-CW, 2012 WL 130412, at *2 (D. Utah Jan. 17, 2012) ("[T]he law requires a showing that a 'party' committed the infringements, it is not sufficient to simply state that it was the [accused product] that did so."). Plaintiff contends that its rote allegations regarding the Defendants entering a "common business enterprise" establish an alter ego theory connecting the CashClub Wallet to Everi Games Holding. ECF No. 33 at 1 n.1 (citing ECF No. 1 ¶ 9); *see also* ECF No. 33 at 9 (same). The Court disagrees with that contention and, in any event, the Court rejects Plaintiff's alter ego theory. *See supra* Section III.A.2. Accordingly, Sightline has failed to plead a claim for any infringement against Everi Games Holding under *Twombly* and *Iqbal*.

## IV. CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) as to Everi Holdings, Everi Payments, and Everi Games is **GRANTED**. The Court's Clerk is directed to dismiss Everi Games, Everi Payments, and Everi Holdings as defendants from this Action.

It is **FURTHER ORDERED** Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) as to the claims against Everi Games Holding is **GRANTED**. It is therefore **ORDERED** that all Plaintiff's claims against Everi Games Holding are **DISMISSED** without prejudice. Defendants' other, alternative requests are **DENIED AS MOOT**, given this Court's rulings on dismissal.

Having ordered dismissal of the claims against Everi Games Holding without prejudice under Rule 12(b)(6), the Court **GRANTS** leave for Plaintiff to file an amended complaint within 14 days hereof. Plaintiff's failure to file an amended complaint within the next 14 days shall be construed by the Court as an election by Plaintiff not to re-urge its complaint in this case, and in such event the Clerk shall close this case.

SIGNED this 1st day of June, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE